255 F.3d 1189 (9th Cir. 2001)
 LITE-ON PERIPHERALS, INC., A CORPORATION, PLAINTIFF-APPELLEE,
v.
BURLINGTON AIRE EXPRESS, INC., A CORPORATION, DBA BURLINGTON OCEAN SERVICES, DEFENDANT-APPELLANT, AND DOES 1 THROUGH 10, INCLUSIVE, DEFENDANT.
 No. 99-57003
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted June 6, 2001--Pasadena, California
Filed July 10, 2001
 
 Kathleen C. Jeffries, Russell, Hancock, Jeffries & Gaston Llp, Pasadena, California, for the appellee.
 Michael W. Lodwick, Haight, Brown & Bonesteel, Llp, Santa Ana, California, for the appellant.
 Appeal from the United States District Court for the Central District of California J. Spencer Letts, District Judge, Presiding. D.C. No. CV-98-07709-JSL
 Before: Procter Hug, Jr., Stephen S. Trott, and William A. Fletcher, Circuit Judges.
 
 Trott, Circuit Judge
 OPINION
 
 1
 In this case we must decide whether a consignor of goods named in a bill of lading has standing to sue the carrier for misdelivery of goods and breach of contract where there is evidence that the consignee, and not the consignor, entered into the shipment contract with the carrier. We answer this question affirmatively, and hold that, in this situation, the consignor of goods was a party to the contract evidenced by the bill of lading with full rights to enforce it. Accordingly, we affirm the district court's decision granting summary judgment in favor of the plaintiff.
 
 FACTS
 
 2
 The parties in this case are Lite-On Peripherals, Inc. ("Lite-On") and Burlington Air Express, Inc. ("Burlington"). Lite-On sued Burlington for breach of contract and misdelivery of goods, alleging that Burlington had violated the terms of its own bill of lading by failing to obtain an endorsed copy of the bill before delivering goods to the buyer, Reveal Computer Products ("Reveal"). Because Reveal turned out to be insolvent, Burlington's failure to obtain a copy of the bill resulted in a loss of over $100,000 to Lite-On.
 
 
 3
 Lite-On's involvement with this case stems from its relationship with the Silitek Corporation, a Taiwanese exporter of computer products. Lite-On is a subsidiary of Silitek, and is the assignee of Silitek's rights under the bill of lading that is the center of this dispute. The defendant, Burlington, is a company engaged in the business of transporting goods over-seas. Reveal Computer Products is a computer manufacturing company located in California and is not a party to the case.
 
 
 4
 On January 22, 1996, Burlington received in Keelung, Taiwan, a shipment of 1,000 cartons of computer keyboards from Silitek. Silitek gave Burlington an invoice and a packing list that indicated that the keyboards were to be shipped to Reveal at its offices in California. Burlington, in turn, issued Silitek a document entitled a "Negotiable Combined Transport Bill of Lading." This bill of lading listed Silitek as the consignor of the keyboards. The goods were consigned to the order of Reveal, and listed "LPI" as a "notify party" along with Reveal. Although "LPI" was meant to refer to Lite-On, the bill of lading did not indicate this, nor did it list any address or contact information for LPI. The following language also appeared on the face of the bill: "One of these Combined Transport Bills of Lading must be surrendered duly endorsed in exchange for the goods."
 
 
 5
 Although the bill of lading indicated that the keyboards were to be delivered to Reveal, Lite-On claims that Reveal was not in fact the intended consignee, but that Lite-On was. Lite-On claims that the goods were ultimately intended for Reveal, but that Lite-On was to receive them first and deliver them to Reveal only when Lite-On, on behalf of Silitek, was satisfied with Reveal's creditworthiness. Lite-On discovered the mistake when it received the bill of lading from Silitek. On January 29, 1996, as soon as the error was recognized, Lite-On claims that one of its employees telephoned Burlington and instructed it not to deliver the goods to Reveal. Lite-On also claims that on February 2, 1996, it sent Burlington a facsimile letter again instructing Burlington not to deliver the goods to Reveal. Burlington, however, claims to have no record of either the telephone call or the fax.
 
 
 6
 Burlington delivered the keyboards to Reveal. Reveal, however, did not give Burlington a copy of the bill of lading that was supposed to be obtained in exchange for the goods. In fact, Reveal has never had the bill, which has at all times been in either Silitek's or Lite-On's possession.
 
 
 7
 Lite-On was able to recover approximately half of the keyboards mistakenly delivered to Reveal. The unrecovered keyboards, however, were worth $101,602.80. Reveal has not paid Lite-On or Silitek for the keyboards it did receive, and has filed for bankruptcy. Silitek has now assigned to Lite-On all rights it possessed under the bill of lading.
 
 
 8
 After attempting unsuccessfully to obtain payment from Burlington for the misdelivered keyboards, Lite-On filed suit in federal district court. Lite-On alleged a claim for breach of contract, specifically, breach of the clause in Burlington's bill of lading that indicated that the keyboards would not be delivered without surrender of a duly endorsed bill. The complaint also included causes of action for misdelivery of cargo and negligence. After the parties had conducted informal discovery as ordered, the district judge entered summary judgment in favor of Lite-On. Burlington now appeals.
 
 DISCUSSION
 
 9
 We review de novo a district court's decision to grant summary judgment. See, e.g., Balint v. Carson City, 180 F.3d 1047, 1050 (9th Cir. 1999) (en banc). Making all inferences in favor of the non-moving party, we must determine whether material issues of fact exist that would necessitate a trial. Id. In this case, summary judgment in favor of Lite-On was appropriate.
 
 
 10
 Lite-On contends that this is a straightforward contract case. We agree. Lite-On is the assignee of Silitek's rights under the bill of lading, and is therefore able to enforce that contract as Silitek would. The bill of lading, which Burlington itself issued, contained a "surrender-upon-delivery" clause indicating that the keyboards would not be turned over to the named consignee, Reveal, unless the consignee produced an endorsed bill of lading. Despite this language, Burlington gave the goods to Reveal without first requiring Reveal to produce the bill. Burlington admits these essential facts, which are the only facts necessary to establish liability under the bill of lading. See, e.g., Pere Marquette Ry. Co. v. J.F. French & Co., 254 U.S. 538, 546-47 (1921) (failure to require surrender of endorsed bill of lading before delivery of goods when bill of lading so requires is actionable misconduct on the part of the carrier); C-Art Ltd. v. Hong Kong Island Line America, 940 F.2d 530, 532-33 (9th Cir. 1991) (same). Burlington, however, raises numerous issues as to why this case is not so simple. We address these arguments below.
 
 
 11
 A. Silitek Was a Party to the Bill of Lading Contract, and Lite-On, as Silitek's Assignee, Has Standing to Enforce it.
 
 
 12
 Burlington's arguments boil down to the central assertion that Silitek was a stranger to the shipping contract evidenced by the bill of lading, and that therefore, neither Silitek nor Lite-On has standing to enforce the surrender upon delivery clause. This argument fails, and once this card is pulled out, Burlington's whole house falls down.
 
 
 13
 Burlington bases its argument that Silitek was a stranger to the bill of lading on the following contentions and facts. First, it argues that Reveal, and not Silitek, arranged to have Burlington ship the keyboards from Taiwan to California. To support this contention, Burlington points to a pre-existing "Rate and Service Agreement" between it and Reveal, in which Reveal agreed to use Burlington for all its shipping needs.
 
 
 14
 Burlington also claims that Reveal paid the freight charges for the shipment of keyboards. It points out that the invoice provided by Silitek to Burlington contained the notation "F.O.B. Taiwan." Burlington argues that this notation means that Silitek was responsible for getting the keyboards to Burlington, but that Reveal would actually be responsible for Burlington's freight charges for the transportation to the United States. Burlington claims, not without some support, that the term "F.O.B. Taiwan" would mean that title to the keyboards transferred to Reveal when Silitek delivered the keyboards to Burlington in Taiwan. See, e.g., U.C.C. §§ 2-319(1); Black's Law Dictionary 578 (5th ed. 1979). Burlington argues that these facts and propositions demonstrate that Silitek was a stranger to the shipping contract, and that therefore Lite-On is an interloper in no position to bring this lawsuit.
 
 
 15
 Burlington's analysis misses the point. We assume for the sake of argument that Reveal made the arrangements to have Burlington ship the keyboards, that Reveal was responsible for the freight charges, and that the "F.O.B Taiwan" notation would mean that title to the goods had theoretically passed to Reveal. Even if all these claims were true, none of them would mean that Silitek was a stranger to the shipping contract.
 
 
 16
 First, Burlington's claim that Silitek had nothing to do with the shipping contract is factually insupportable. The undisputed facts of this case demonstrate that Silitek was involved with the transaction that produced the bill of lading, despite Burlington's contentions to the contrary. As Burlington admits, Silitek was the party that gave it the invoices indicating what goods were to be shipped and to whom.
 
 
 17
 Burlington incorporated the information on these invoices into the bill of lading. And Burlington gave Silitek the bill of lading when Silitek delivered the keyboards to Burlington in Taiwan. In contrast, Burlington never gave a copy of the bill to Reveal.
 
 
 18
 Silitek is also listed as the "consignor" of the goods on the face of the bill of lading. The fine print on the reverse of the bill indicates that a consignor is a party to the shipping contract evidenced by the bill. It indicates that the bill of lading is a contract between the "Carrier" and the "Merchant," and spells out various rights and duties of those parties. The bill of lading defines "Merchant" as including several parties, namely, "the Shipper, the Consignor, the Consignee, the Holder of the Bill of Lading, the Receiver and the Owner of the Goods." (emphases added). The bill also lists certain duties specific to the Consignor; for example, it must indemnify the Carrier for all losses resulting from its own inaccurate description of goods. Thus, Burlington's own bill of lading expressly contemplates that the consignor is a party to the shipping contract. This fact forecloses any argument by Burlington that Silitek and Lite-On have no standing to enforce the provisions of the bill.
 
 
 19
 We have held in a similar case that where a seller of goods is included within the definition of "Merchant" under a bill of lading, a vessel owner cannot claim that the seller is not entitled to enforce the bill. See All Pacific Trading, Inc. v. Vessel M/V Hanjin Yosu, 7 F.3d 1427, 1431-32 (9th Cir. 1993). In All Pacific, we observed that "because the [faces of the] bills of lading do not name any particular parties as Merchants, we must rely on the contract definition of Merchant on the reverse of the bills of lading." Id. at 1432. We noted that the definition of "Merchant" on the reverse of the bill of lading:
 
 
 20
 unambiguously provides that the cargo owner has obligations under the bills of lading. The provision anticipates that the various parties defined as Merchants would be jointly and severally liable for freight charges. By defining Merchant broadly, the bills of lading attempt to create a broad range of parties from whom the carrier can seek payment for the shipment.
 
 
 21
 Id. The reasoning from All Pacific is applicable to this case. Burlington cannot seek to include a broad range of parties within the contract's definition of "Merchant," and then claim that one of those parties has no standing to enforce the surrender-upon-delivery clause.
 
 
 22
 Moreover, numerous cases have noted that a bill of lading is the basic shipping contract between a seller and carrier of goods. See, e.g., Southern Pacific Transp. Co. v. Commercial Metals Co., 456 U.S. 336, 342 (1982) (stating that "[t]he bill of lading is the basic transportation contract between the shipper-consignor and the carrier.") citing Texas & Pacific Ry. Co. v. Leatherwood, 250 U.S. 478, 481 (1919); C-Art, 940 F.2d at 532. Burlington correctly points out that these cases do not hold that a consignor is a party to the shipping contract as a matter of law, even where the arrangements for shipment may have been made by the buyer or consignee. However, as discussed above, the proposition that Silitek was a stranger to the shipping contract cannot be supported. Bills of lading, after all, are designed to prevent sellers of goods from losing money when distant or unfamiliar buyers turn out to be insolvent. In Allied Chem. Int'l. Corp. v. Companhia de Navegacao Lloyd Brasileiro, 775 F.2d 476 (2d Cir. 1985), the Second Circuit noted that:
 
 
 23
 The documentary sale [evidenced by a bill of lading] enables the distant seller to protect himself from an insolvent or fraudulent foreign buyer by ensuring that the buyer ordinarily cannot take possession of the goods until he has paid for them . . . Absent a valid agreement to the contrary the carrier, the issuer of the bill of lading, is responsible for releasing the cargo only to the party who presents the original bill of lading . . . . If the carrier delivers the goods to one other than the authorized holder of the bill of lading, the carrier is liable for misdelivery.
 
 
 24
 Allied Chemical, 775 F.2d at 481 (emphasis added).
 
 
 25
 This case illustrates why surrender-upon-delivery clauses are necessary to protect a consignor's interest in shipped goods. Silitek had not been paid when it delivered the keyboards to Burlington, and it was not yet sure that Reveal, its ultimate customer, was creditworthy. The idea that Silitek would send Reveal goods for which it had not been paid, with no guarantee that it would receive payment, simply does not hold water. Until Silitek obtained payment, its interests depended on Burlington's performance of its promise to deliver the goods only upon surrender of the bill of lading. Thus, we reject Burlington's claim that Silitek was a stranger to the shipping contract.
 
 
 26
 B. Burlington's Argument That an "F.O.B. Place of Origin" Provision Can Alter a Carrier's Liability Fails.
 
 
 27
 Burlington's argument that Silitek was not a party to the contract is closely tied to its argument that the "F.O.B. Taiwan" provision in the bill of lading absolves it of liability. In C-Art, we rejected an argument nearly identical to Burlington's. In that case, the defendant-carrier argued that the fact that goods were shipped F.O.B. Hong Kong, the place of origin, indicated that the insolvent consignee had taken title to the goods, and that therefore the consignor could not claim that the goods had been misdelivered. See C-Art, 940 F.2d at 553. The bill of lading at issue in C-Art also had a "surrender upon delivery" clause like the one in this case. We held that the defendant's arguments were:
 
 
 28
 inimical to the express provisions of the bill of lading, as well as contradictory applicable authorities [which hold that possession of the original bill of lading conveys title and entitles the holder to the goods] . . . . Although the goods were shipped "F.O.B. Hong Kong," with [the consignee] bearing the risk of loss . . . it is undisputed that [the consignee] never paid C-ART for the goods. In this case, therefore, the bill of lading controls.
 
 
 29
 Id. Burlington's argument that the "F.O.B Taiwan" provision in the bill of lading cuts off Silitek's rights under that contract therefore fails.
 
 
 30
 C. Burlington's Remaining Arguments Fail.
 
 
 31
 Once it is established that Lite-On, through Silitek, was a party to the shipping contract with standing to enforce the provisions of the bill of lading, Burlington's remaining arguments are easily dispatched.
 
 
 32
 First, it does not matter that Lite-On was not a holder in due course of a bill of lading that had been endorsed by Reveal, as Burlington argues it must have been in order to be able to sue on the bill. As discussed above, one of the purposes of the surrender-upon-delivery clause was to prevent the bill of lading from getting into the hands of an insolvent buyer such as Reveal. Therefore, it makes little sense to argue that a consignor cannot sue a carrier for misdelivery because the consignee--who should never have received the goods or the bill in the first place--has not endorsed the bill.
 
 
 33
 Burlington also argues that the district court ignored certain factual issues in granting Lite-On summary judgment. Specifically, it argues that a factual issue exists as to whether Burlington received Lite-On's phone call and faxed warning that Reveal was not to receive the shipment of keyboards. Burlington also argues that there are issues of fact remaining as to whether it or Silitek was at fault for the mistaken designation of Reveal as the consignee. While Burlington is correct that these issues represent genuine factual disputes, they are not material ones. Lite-On's breach of contract action would remain intact even if it had never attempted to warn Burlington not to deliver the keyboards to Reveal. Burlington's contractual liability would also remain intact whether or not the mistake in designating Reveal as the consignee was attributable to Silitek. If Burlington had abided by its own surrender-upon-delivery clause, the mistake would not have resulted in a loss of over $100,000 to Lite-On. The bill of lading specifically said that Burlington would not deliver the goods to any consignee--be it Reveal or Lite-On--without obtaining an endorsed bill of lading, and it breached this provision.
 
 
 34
 Burlington's remaining arguments are similarly misplaced. It is irrelevant whether Burlington would have been required to honor an order to stop delivery from Lite-On. The bill of lading specifically stated that the goods could not be delivered unless the buyer produced an endorsed bill, and Burlington disregarded this provision. Finally, whether Lite-On would have had an option to reclaim the goods from Reveal under section 2-702(2) of the Uniform Commercial Code is likewise irrelevant. That a remedy against Reveal may have existed under the U.C.C. or California's equivalent has no bearing on the issue of whether Burlington was liable for a breach of its own contract.
 
 
 35
 For the foregoing reasons, summary judgment in favor of Lite-On was appropriate. The judgment of the district court is therefore AFFIRMED.