**KING JEWELRY, INC.**

v.

**FEDERAL EXPRESS CORP., et al.**

**No. CV 00–13401–RC.**

United States District Court,
C.D. California.

Sept. 13, 2001.

---

Joseph Daneshrad, Los Angeles, CA, for Plaintiff.

Robert J. Taitz, Shane & Taitz, San Francisco, CA, for Defendant.

**PROCEEDINGS: (IN CHAMBERS) DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

CHAPMAN, United States Magistrate Judge.

On August 16, 2001, defendant Federal Express Corporation filed a notice of motion and motion for partial summary judgment on the ground "FedEx is ... entitled to judgment ... as a matter of law as the contract of carriage governing the shipment at issue limits plaintiff's recovery, if any, to a maximum of $500.00," Notice of Motion at 2:5–7, with a supporting memorandum of points and authorities, the declaration of Steve T. Foster, with exhibits, and a separate statement of undisputed facts. On August 29, 2001, plaintiff King Jewelry, Inc. filed a memorandum of points and authorities in opposition to defendant's motion for partial summary judgment, with supporting declarations and exhibits, objections to evidence submitted by defendant in connection with its motion for partial summary judgment, and a statement of genuine issues. On September 5, 2001, defendant FedEx filed its reply and the supplemental declaration of Steve T. Foster, with exhibits. The parties have consented to proceed before Magistrate Judge Rosalyn M. Chapman pursuant to 28 U.S.C. § 636(c).

Due to the closure of the federal courthouse on September 12, 2001, and pursuant to Rule 78 and Local Rule 7.11, this matter is decided in Chambers without oral argument.

### BACKGROUND

On November 21, 2000, plaintiff King Jewelry, Inc., a California corporation ("King"), filed a complaint against defendant Federal Express Corporation ("FedEx") in the Superior Court for the County of Los Angeles, setting forth three

claims: (1) breach of contract; (2) violation of Insurance Code; and (3) tortious breach of contract. King seeks compensatory damages in the amount of $37,000.00, general damages according to proof, punitive damages in the amount of $1 million, interest, attorney's fees, and other relief. On December 26, 2000, the state court action (case no. BC 240549) was removed to this court on diversity of citizenship and federal question grounds, 28 U.S.C. §§ 1331 and 1332. On January 3, 2001, FedEx answered the complaint and raised eight affirmative defenses.

## FACTUAL FINDINGS

The evidence submitted by the parties establishes the following undisputed facts:

1. On an undetermined date, Yehouda Hanasab, president and sole shareholder of King, bought a pair of marble and brass statues with candelabra from Elegant Reflections, a purveyor of jewelry and object d'art located in Florida, for $37,500.00. Hanasab Decl., ¶¶ 2–3, Exh. 5.

2. Elegant Reflections hired Raymond Reppert, a "professional packager and crater" with 12 years experience, to package, crate and ship the statues and candelabra to King. Hanasab Decl., ¶ 4; Reppert Decl., ¶ 1.

3. Reppert packaged and crated the statues and candelabra in three wooden crates, with directional markings and signs stating "Fragile–Handle with Care." Reppert Decl., ¶¶ 3–4.

4. On February 5, 2000, Reppert shipped the statues and candelabra via FedEx airbill no. 804817669184 ("King

airbill"), which stated that the shipper was Raymie's, 110 N.W. First Street, # 9, Dania, FL 33004 and the recipient was King Jewelry, 653 S. Hill Street, Los Angeles, CA 90014. Foster Decl., ¶ 4, Exh. B; [1] Reppert Decl., ¶¶ 3, 11, Exh. 1.

5. Reppert or the shipper noted on the King airbill that the shipment consisted of three packages, weighing 344 pounds, with a declared value of $37,000.00. *Ibid.*

6. To ship the statues and candelabra, Reppert paid FedEx $684.50 (transportation charge in the amount of $485.04, declared value charge in the amount of $185.00, and fuel surcharge in the amount of $14.55), and in exchange received invoice no. 7–868–75298. Reppert Decl., ¶¶ 7, 12, Exh. 2.[2]

7. The statues and candelabra were delivered to King on February 7, 2000, at which time King discovered that both statues had been broken in transit. Foster Decl., ¶ 12, Exh. E; Hanasab Decl., ¶ 6.

8. FedEx was originally granted an air carrier certificate by the Federal Aviation Administration on March 7, 1972, and the certificate was reissued on May 14, 1998. Foster Decl., ¶ 3, Exh. A.

## DISCUSSION

### I

Federal Rule of Civil Procedure 56(c) authorizes the granting of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

---

1. The Court accepts Mr. Foster as the custodian of records for defendant FedEx, and, thus, the exhibits attached to Mr. Foster's declaration are admitted into evidence. Fed.R.Evid. 803(6) and (7), 1003. However, as King aptly notes, the statements made in paragraphs 7, 8, 9 and 10 of Mr. Foster's declaration constitute opinions and conclusions without foundation, all of which are inadmissible under Federal Rule of Evidence 701. Accordingly, the Court sustains King's objections to paragraphs 7, 8, 9 and 10.

2. Mr. Foster inexplicably fails to authenticate or even identify the invoice.

any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party bears the initial burden of identifying the elements of the claim in the pleadings, or other evidence, which the moving party "believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Adickes v. S.H. Kress and Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. at 2553.

"[I]n ruling on a motion for summary judgment, the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in [that party's] favor." *Hunt v. Cromartie,* 526 U.S. 541, 552, 119 S.Ct. 1545, 1551–52, 143 L.Ed.2d 731 (1999) (citation and internal quotation marks omitted); *Diruzza v. County of Tehama,* 206 F.3d 1304, 1314 (9th Cir.2000), *cert. denied,* 531 U.S. 1035, 121 S.Ct. 624, 148 L.Ed.2d 533 (2000). However, more than a "metaphysical doubt" is required to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Brinson v. Linda Rose Joint Venture,* 53 F.3d 1044, 1048 (9th Cir.1995). Rather, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356 (citation omitted).

## II

■ Federal Express is a federally certified all-cargo air carrier operating under the authority granted it by the Federal Aviation Administration. *Federal Express Corp. v. Cal. Pub. Util. Comm'n,* 936 F.2d 1075, 1076 (9th Cir.1991), *cert. denied,* 504 U.S. 979, 112 S.Ct. 2956, 119 L.Ed.2d 578 (1992); Finding 8. As such, FedEx's liability for the loss of, or damage to, goods shipped in interstate transit is governed by federal common law. *Read–Rite Corp. v. Burlington Air Express, Ltd. .,* 186 F.3d 1190, 1195–98 (9th Cir.1999); *Deiro v. American Airlines, Inc.,* 816 F.2d 1360, 1365 (9th Cir.1987); *Sam L. Majors Jewelers v. ABX, Inc.,* 117 F.3d 922, 926–29 (5th Cir.1997); *see also Insurance Co. of North America v. Federal Express Corp.,* 189 F.3d 914, 926 (9th Cir.1999) (Wm.Fletcher, J., Concurring) (Federal courts "have consistently applied federal common law to determine whether air carriers may limit their liability for cargo loss or damage."); *Kemper Ins. Cos. v. Federal Express Corp.,* 252 F.3d 509, 512 (1st Cir.2001) ("When a shipper (or, as here, a subrogee standing in place of a shipper) contests the validity of a contractual clause that limits an air carrier's liability, we apply federal common law." (footnote omitted)). In fact, "state law regulating the scope of air carrier liability for loss or damage to cargo is preempted by the [Airline Deregulation Act of 1978 ('ADA')]." *Read–Rite,* 186 F.3d at 1197; *see also Insurance Co. of North America,* 189 F.3d at 925 ("Congress has . . . expressly preempted any state law governing the validity of limited liability contracts of air carriers." (Wm.Fletcher, J., Concurring)). As the Ninth Circuit has held:

> Under established federal common law, if a carrier wishes to enforce a limited liability provision, its contract must offer the shipper (1) reasonable notice of limited liability, and (2) a fair opportunity to purchase higher liability. Limited liability provisions are prima facie valid if the face of the contract (or, in this case, air waybill) recites the liability limitation and "the means to avoid it." The burden then shifts to the shipper to prove that it did not have a "fair opportunity" to purchase greater liability coverage.

*Read–Rite,* 186 F.3d at 1198 (citations omitted).

Here, King, as the assignee of Reppert or Raymies's rights under the shipping agreement, Reppert Decl., ¶ 10, is able to enforce the contract as Raymies would. *Lite–On Peripherals, Inc. v. Burlington Aire Express, Inc.,* 255 F.3d 1189, 1192 (9th Cir.2001). The reverse side of the King airbill sets forth the terms and conditions of shipping under the King airbill, and by those terms and conditions, specifically incorporates FedEx's Service Guide. Foster Decl., ¶¶ 4–5, Exhs. B–C. The terms and conditions of the King airbill provide for limitations on FedEx's liability, and specifically limit "items of extraordinary value" to $500.00. *Id.* Further, "items of extraordinary value" are defined to "include shipments containing such items as artwork, jewelry, furs, precious metals, negotiable instruments, and other items listed in our Service Guide." *Id.* The March 15, 1999, edition of the FedEx Service Guide is incorporated into the King airbill. Foster Decl., ¶ 6, Exh. D. That FedEx Service Guide provides, in relevant part:

**Declared Value and Limits of Liability**

A. The declared value of any shipment represents our maximum liability in connection with a shipment.... [¶] Exposure to and risk of any loss in excess of the declared value is either assumed by the shipper or transferred by the shipper to an insurance carrier through the purchase of an insurance policy. You should contact an insurance agent or broker if insurance coverage is desired. WE DO NOT PROVIDE INSURANCE COVERAGE OF ANY KIND.

\* \* \* \* \* \*

D. Except as limited by paragraphs (F), (G), (H) and (I) below, the maximum declared value per package in any ...

FedEx Express Saver shipment is $50,000.

\* \* \* \* \* \*

G. Packages (including freight shipments) containing following items of extraordinary value are limited to a maximum declared value of $500

1. Artwork, including any work created or developed by the application of skill, taste or creative talent for sale, display or collection. This includes, but is not limited to, items (and their parts) such as paintings, drawings, vases, tapestries, limited-edition prints, fine art, statuary, sculpture, collectors items, ... and any other commodity that by its inherent nature is particularly susceptible to damage, or the market value of which is particularly variable or difficult to ascertain.

\* \* \* \* \* \*

ANY EFFORT TO DECLARE A VALUE IN EXCESS OF THE MAXIMUMS ALLOWED IN THIS SERVICE GUIDE IS NULL AND VOID AND THE ACCEPTANCE FOR CARRIAGE OF ANY SHIPMENT BEARING A DECLARED VALUE IN EXCESS OF THE ALLOWED MAXIMUMS DOES NOT CONSTITUTE A WAIVER OF ANY PROVISION OF THIS SERVICE GUIDE AS TO SUCH SHIPMENT, EVEN IF A HIGHER VALUE IS DECLARED. OUR LIABILITY FOR LOSS, DAMAGE OR DELAY WILL NOT EXCEED A SHIPMENT'S REPAIR COST, ITS DEPRECIATED VALUE OR ITS REPLACEMENT COST, WHICHEVER IS LESS.

Foster Decl., ¶ 6, Exh. D at 18–19.

■ The King airbill and incorporated Service Guide comprise the contract for carriage that governs the rights of the

parties herein, *Sam L. Majors Jewelers,* 117 F.3d at 930, and limit the liability of FedEx.[3] *Id.* To enforce the limited liability provisions, this Court must determine whether the King airbill and incorporated Service Guide comply with the requirements of federal common law by giving reasonable notice to the shipper of the limited liability provisions and a fair opportunity to choose higher liability coverage. *Read–Rite,* 186 F.3d at 1198; *Deiro,* 816 F.2d at 1365.

■ Here, the King airbill and Service Guide are remarkably similar to the airbill and service guide found by the Fifth Circuit Court of Appeals in Jewelers to "give reasonable notice of their meaning." *Sam L. Majors Jewelers,* 117 F.3d at 930. First, "the airbill contained a conspicuous notice on the front directing the customer to the terms and conditions printed on the reverse of the document.[4] This provision provided adequate notice of the easily understood terms on the reverse side. In addition, the back of the notice incorporated by reference a service guide that was readily available, and written in plain language." *Id.* (footnote added) Second, the shipper, as in Jewelers, was a professional "packager and crater," with considerable experience in shipping. Finding 2. It is inconceivable that a professional packager and crater such as Mr. Reppert had not previously shipped with FedEx and was not aware of the terms and conditions of shipment through FedEx. Moreover,

since Mr. Reppert was acting as the agent for Elegant Reflections, a purveyor of antiques and object d'art, and he had been informed that shipment of the statues with $37,000.00 insurance was unavailable through two of FedEx's competitors, United Parcel Service and Emery Worldwide, Reppert Decl., ¶ 5, Mr. Reppert's interest should have been piqued about FedEx's terms of shipment, and he should have requested a copy of the Service Guide to expressly read the liability provisions regarding shipments of antiques or object d'art. *Sam L. Majors Jewelers,* 117 F.3d at 930. Finally, one would have thought that a professional packager and crater such as Mr. Reppert would have known to obtain insurance for the shipment. *Id.* Thus, the Court finds that the King airbill and Service Guide comply with federal common law requirements, and FedEx's limited liability provisions are enforceable. *Id.*

■ King raises several arguments why the limited liability provisions are inapplicable. First, King contends there is a material issue of fact as to whether the statues are "items of extraordinary value" or merely "household items." This is not so. Unfortunately for King, the sales price and declared value of the statues— $37,500.00—make it clear that they are not ordinary household items found in the average American home. Additionally, Elegant Reflections holds itself out as a purveyor of antiques and object d'art, Finding 1—not household items. Moreover, in his

---

3. An airbill may incorporate by reference outside material limiting liability. *Deiro,* 816 F.2d at 1363–65; *Sam L. Majors Jewelers,* 117 F.3d at 931 n. 17.

4. Specifically, the front of the FedEx airbill provides:

> By using this Airbill, you agree to the service conditions in our current Service Guide or U.S. Government Service Guide. Both are available on request. SEE BACK OF SENDER'S COPY OF THIS AIRBILL

FOR INFORMATION AND ADDITIONAL TERMS.
Foster Decl., ¶¶ 4–5, Exhs. B–C. The reverse of the airbill provides, in pertinent part:

> Agreement to Terms By giving us your package to deliver, you agree to all the terms in our current Service Guide, which is available on request. You also agree to those terms on behalf of any third party with an interest in the package.... No one is authorized to change the terms of our Agreement.

Foster Decl., ¶ 5, Exh. C.

deposition, Mr. Hanasab himself describes the items as marble and bronze "matching . . . statues . . . like a Liberty statue" that he bought at a "jewelry and antique show." Foster Decl., ¶ 14, Exh. F at 11:7–18. Finally, King's own expert describes the items as "high quality and beautiful candelabras handmade from the finest white marble with 24 karat gold-wash handmade bronze, valued at approximately $40,000.00." Anavian Decl., ¶ 4. In short, based on the evidence presented, this Court concludes, as a matter of law, that the statues are "items of extraordinary value," as defined in the King airbill and FedEx Service Guide.[5]

■ To show that it did not have a "fair opportunity" to purchase higher liability insurance, King makes several other arguments, none of which is availing. First, King argues that the contract between King and FedEx was modified both orally and in writing by representations made by an unidentified FedEx agent and the acceptance by a FedEx agent of $185.00 "to cover the loss of the cargo up to $37,000.00." Opposition at 8:10–18, 9:11–15. However, these modification claims are based on state contract law, which is not applicable; rather, under federal common law, the contract between the parties is governed solely by the airbill, *Sam L. Majors Jewelers*, 117 F.3d at 931, which specifically provides "[n]o one is authorized to change the terms of our Agreement."[6] Foster Decl., ¶ 5, Exh. C. Based on the contract of carriage, any reliance on representations from unidentified FedEx agents was unreasonable, and could not modify the contract's terms. *Wagman v. Federal Express Corp.*, 844 F.Supp. 247, 250 (D.Md.1994), *affirmed by*, 47 F.3d 1166 (4th Cir.1995) (per curiam) (Table); *Kansas State Bank & Trust Co. v. Emery Air Freight Corp.*, 656 F.Supp. 200, 205 (D.Kan.1987).

■ Similarly, King's claim that "Federal Express has waived all rights to any limits of liability and should be estopped to assert such a defense," Opposition at 11:19–21, is inapplicable. The ADA "confines courts, in breach-of-contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement." *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 233, 115 S.Ct. 817, 826, 130 L.Ed.2d 715 (1995).[7] "Under Wolens,

5. King also argues that the statues were purchased by Mr. Hanasab for use in his own household, and not for resale, display or collection. However, Mr. Hanasab's intended use of the statues is of limited relevance—Michelangelo's David would be no less an "artwork" if used as a coatrack. Moreover, the circumstances of this case make his argument highly unlikely. In the first place, the purchase receipt from Elegant Reflections does not name the statues's purchaser, and Mr. Hanasab has not shown that he personally, as an individual rather than as president of King, bought the statues; in fact, Mr. Hanasab has provided no proof of any payment for the statues. Further, the statues were shipped to King at its business address, rather than to Mr. Hanasab's personal residence, and this litigation has been brought in the name of King, rather than on behalf of Mr. Hanasab, as an individual. Regardless of

whether the statues were purchased for resale, or for Mr. Hanasab's personal use, there is no doubt they are "items of extraordinary value."

6. FedEx also argues "[t]he contract of carriage specifically states that no one may alter or modify the contract of carriage except in writing by the Senior Vice President of Marketing. 'No other agent or employee of FedEx, nor any other person of party, is authorized to do so.' (FedEx Service Guide, page 95.)" Reply at 4:17–21. However, FedEx has not provided the Court with this page from the Service Guide; thus, the Court will not consider this argument.

7. For the same reasons, plaintiff's second and third causes of action for violation of the Insurance Code and violation of an implied-in-law covenant (tortious breach of contract)

common law equitable principles may not be used to adjudicate contract claims relating to rates, routes, or services of any air carrier." *Breitling,* 45 F.Supp.2d at 186.

For the foregoing reasons, FedEx's motion for partial summary judgment limiting King to damages of no more than $500.00 is granted.

### ORDER

Defendant Federal Express Corporation's motion for partial summary judgment is granted, and plaintiff King Jewelry, Inc. is limited to recovery of no more than $500.00.

are preempted. *Wolens,* 513 U.S. at 232–33, 115 S.Ct. at 826; *Sam L. Majors Jewelers,* 117 F.3d at 931; *Breitling U.S.A., Inc. v. Federal Express Corp.,* 45 F.Supp.2d 179, 186 (D.Conn.1999); *Stone v. Continental Airlines, Inc.,* 905 F.Supp. 823, 826 (D.Haw.1995).