**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ONEBEACON INSURANCE COMPANY,
*Plaintiff-Appellant,*

v.

HAAS INDUSTRIES, INC.,
*Defendant-Appellee.*

No. 08-16826

D.C. No.
3:07-cv-03540-BZ

OPINION

Appeal from the United States District Court
for the Northern District of California
Bernard Zimmerman, Magistrate Judge, Presiding

Argued and Submitted
October 4, 2010—San Francisco, California

Filed March 9, 2011

Before: Robert R. Beezer, Andrew J. Kleinfeld, and
Susan P. Graber, Circuit Judges.

Opinion by Judge Beezer

---

**COUNSEL**

James Attridge, San Francisco, California, for the plaintiff-appellant.

Geoffrey W. Gill, Countryman & McDaniel, Los Angeles, California, for the defendant-appellee.

---

**OPINION**

BEEZER, Circuit Judge:

OneBeacon Insurance Company ("OneBeacon") brought suit against Haas Industries, Inc. ("Haas"), under the Carmack

Amendment, 49 U.S.C. § 14706, to recover for goods lost during shipping. Following a bench trial, the district court entered judgment in favor of Haas. OneBeacon appeals the district court's holdings that OneBeacon lacked standing to sue under the Carmack Amendment and, alternatively, that Haas limited its liability. We reverse the holding that OneBeacon lacked standing, affirm the holding that Haas limited its liability, and remand for an entry of judgment consistent with the limitation of liability.

## I

OneBeacon is the subrogated insurer of Professional Products, Inc. ("PPI"). Around June 2005, PPI purchased three pallets of computer wafers from Omneon Video Graphics ("Omneon"). PPI requested that Omneon ship the wafers directly to the City University of New York, the end purchaser of the goods. Omneon and PPI agreed that Omneon would ship the wafers FOB Omneon's dock. Therefore, ownership of the wafers had passed from Omneon to PPI when the shipment left Omneon's dock.

Nevertheless, instead of arranging for its own carrier to transport the wafers, PPI authorized Omneon to arrange shipment through Haas, a carrier Omneon frequently used. Omneon and Haas had previously negotiated a fee schedule that applied to all Omneon shipments, and Omneon kept copies of pre-printed Haas bill of lading forms, which Omneon filled in prior to a shipment.

The face of Haas's bill of lading provides blank spaces for details about the shipping arrangement, such as the type and weight of the shipment, the type of service, and the sending and receiving companies. Haas also lists Conditions of Contract Carriage on the reverse side of the bill of lading. The Conditions of Contract Carriage are expressly incorporated into the bill of lading.

The Conditions of Contract Carriage describe the rights and obligations of various parties, including the "Shipper." Among other things, the shipper and consignee are jointly and severally liable for any unpaid shipping charges. Paragraph 1 of the Conditions of Contract Carriage defines "Shipper" as "the party from whom the shipment is received, the party who requested the shipment be transported by Haas Industries, and [sic] party having an interest in the shipment, and any party who acts as an agent for any of the above."

The Conditions of Contract Carriage also describe the extent of Haas's liability for "lost, damaged, misdelivered or otherwise adversely affected" goods. Paragraph 8 states that "in the absence of a higher declared value for carriage," Haas's liability "is limited to a minimum of $50.00 per shipment or $0.50 per pound, per piece." The same paragraph states that "Declared values for carriage in excess of $0.50 per pound, per piece, shall be subject to an excess valuation charge." The face of the bill of lading provides a blank "declared value" box two lines above the shipper's signature. An adjacent line states that the declared value is "agreed and understood to be not more than $.50 per pound, per piece, or $50.00 whichever is higher unless higher value declared and charges paid [sic]."

Haas's bill of lading does not specify the amount of the excess valuation charge, but Haas asserts that it had provided this information to customers. In January 2005, Haas sent a letter to its customers specifying the excess valuation charge. In the letter, Haas informed customers that it had increased the excess valuation charge to $0.70 for every $100 of declared value. The letter reiterated, "Obviously, if you do not declare value on the bill of lading you will not be charged." Haas states that it sent a copy of this letter to each of its customers, including Omneon, by enclosing the letter with its billing statement. Haas asserts that it would have re-sent the information to customers upon request.

Omneon contracted with Haas to ship PPI's goods. Omneon used one of Haas's pre-printed bills of lading for the shipment. Omneon filled in the City University of New York's address, the number of pallets to be shipped, and the weight of the shipment. Omneon did not list a declared value for the shipment. PPI did not sign the bill of lading, and Omneon did not indicate PPI's ownership of the goods identified on the bill of lading.

Haas retained Direct Air Service, Inc. to transport the shipment to New York. When the shipment arrived, it contained only two of the three pallets of computer wafers.

PPI filed a claim with Haas for the lost wafers, but Haas replied that only Omneon was entitled to file a claim. Omneon then filed a claim with Haas, and Haas issued a check for $88 to Omneon, asserting that this amount fulfilled Haas's obligation because the bill of lading limited Haas's liability to $0.50 per pound. OneBeacon, PPI's insurance company, compensated PPI for the value of the lost goods, and OneBeacon stepped into PPI's shoes as subrogee. OneBeacon brought suit against Haas claiming that Haas is liable for the full value of the lost goods under the Carmack Amendment.

Magistrate Judge Bernard Zimmerman held a bench trial on July 1, 2008.[1] The trial focused on three issues: whether One-Beacon had standing to sue under the Carmack Amendment,[2] whether Haas limited its liability, and whether Omneon's acceptance of the $88 check constituted an accord and satisfaction between Haas and PPI. Magistrate Judge Zimmerman found that OneBeacon did not have standing to sue; Haas limited its liability; but Haas failed to prove the existence of an accord and satisfaction.

---

[1]The parties consented to proceed before a magistrate judge.

[2]Magistrate Judge Zimmerman raised the standing issue *sua sponte* before trial.

Judgment was entered in favor of Haas. OneBeacon timely appealed the issues of OneBeacon's standing and Haas's limitation of liability. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II

We review the district court's findings of fact after a bench trial for clear error. *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1067 (9th Cir. 2008) (en banc). We review its conclusions of law de novo. *Id.* Mixed questions of law and fact are also reviewed de novo. *Ambassador Hotel Co. v. Wei-Chuan Inv.*, 189 F.3d 1017, 1024 (9th Cir. 1999).

We review the district court's interpretation of contract provisions de novo. *Conrad v. Ace Prop. & Cas. Ins. Co.*, 532 F.3d 1000, 1004 (9th Cir. 2008).

## III

**[1]** This case presents the question whether an owner of goods who was not referenced by name in the bill of lading has standing under the current text of the Carmack Amendment. Congress passed the Carmack Amendment in 1906 to amend the Interstate Commerce Act and establish a uniform system of liability for carriers of goods in interstate commerce. *See Adams Express Co. v. Croninger*, 226 U.S. 491, 503-06 (1913) (describing the diversity of laws governing carrier liability before the Carmack Amendment and concluding that "Congress intended to adopt a uniform rule" under the Carmack Amendment).

**[2]** "The purpose of the Carmack Amendment was to relieve shippers of the burden of searching out a particular negligent carrier from among the often numerous carriers handling an interstate shipment of goods." *Reider v. Thompson*, 339 U.S. 113, 119 (1950). The Amendment accomplishes this purpose by imposing liability on the receiving, delivering, and

any intermediate carriers regardless of which carrier is at fault. *Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.*, 130 S. Ct. 2433, 2441 (2010); *see also* 49 U.S.C. § 14706(a)(1) (liability of motor carriers and freight forwarders). It also regulates a carrier's ability to limit liability for lost or damaged goods. *See id.*

**[3]** Motor carriers are among the various types of carriers subject to the Carmack Amendment. 49 U.S.C. § 14706. The Carmack Amendment requires a motor carrier to issue a receipt or bill of lading for the property it transports. *Id.* § 14706(a)(1). The carrier is then "liable to the person entitled to recover under the receipt or bill of lading" for any loss or injury to the property caused by any carrier during shipment. *Id.*

During the relevant transaction, Haas was a licensed motor carrier and freight forwarder. The parties therefore agree that under the Carmack Amendment Haas is liable to *someone* for the lost pallet of computer wafers. The question is to whom.

**[4]** OneBeacon was PPI's subrogee. To decide whether OneBeacon has standing, we must therefore determine whether PPI would have standing under the Carmack Amendment.[3] OneBeacon contends that PPI must have standing as the owner of the lost goods. Haas contends that only Omneon has standing because Omneon, not PPI, negotiated the shipping arrangement and signed the bill of lading.

OneBeacon and Haas are not the first parties to debate who has standing to sue under the Carmack Amendment. The original text of the 1906 Carmack Amendment provided that carriers were "liable to the lawful holder" of the "receipt or bill

---

[3]The Carmack Amendment defines "person" to include "a trustee, receiver, assignee, or personal representative of a person." 49 U.S.C. § 13102(18). OneBeacon is therefore a "person" under the statute to the same extent that PPI is such a person. The parties do not dispute this.

of lading." Pub. L. No. 59-337, 34 Stat. 584, 595 (1906). In some early cases, parties argued that the term "lawful holder" was synonymous with the owner of the goods, but the Supreme Court rejected that argument. The Court held that under the original text of the Carmack Amendment, the "lawful holder" of the bill of lading could sue, regardless of who actually owned the goods. *Pa. R.R. Co. v. Olivit Bros.*, 243 U.S. 574, 583 (1917). But this left open the question of whether an owner of goods who did not actually possess the bill of lading could also sue.

In *Davis v. Livingston*, this court held that, regardless of ownership, only the holder of the bill of lading could sue. *See* 13 F.2d 605, 607 (9th Cir. 1926) (concluding that "the Carmack Amendment makes the holder of the bill of lading the representative of the real parties in interest"). Other courts took a broader approach, allowing certain interested parties to sue even if they did not actually possess the bill of lading. *See, e.g.*, *Del., L. & W. R. Co. v. United States*, 123 F. Supp. 579, 581 (S.D.N.Y. 1954) (allowing the United States, as owner of the goods, to sue regardless of who possessed the bill of lading); *Aspen Fish Prods. Co. v. Pa.-Reading Seashore Lines*, 21 A.2d 826, 826-27 (N.J. 1941) (holding that the plaintiff—shipper was allowed to sue when the railroad carrier held the bill of lading at the time of suit).

In 1978, Congress clarified this passage through the Revised Interstate Commerce Act. The 1978 act was passed "to revise, codify, and enact without substantive change the Interstate Commerce Act and related laws." Pub. L. No. 95-473, 92 Stat. 1337, 1337. Among other things, Congress replaced the phrase "lawful holder of the receipt or bill of lading" with the phrase "person entitled to recover under the receipt or bill of lading." 92 Stat. at 1453.

Interpreting the revised wording, some courts have held that particular classes of persons are entitled to recover under the receipt or bill of lading. *See, e.g., Harrah v. Minn. Mining*

*& Mfg. Co.*, 809 F. Supp. 313, 318 (D.N.J. 1992) (noting various classes that are allowed to sue, including shippers, consignors, consignees, "holders of the bill of lading," and "persons beneficially interested in the shipment"). Under this approach, a person may sue as long as he or she belongs to a class of persons that has previously been allowed to sue. *See Banos v. Eckerd Corp.*, 997 F. Supp. 756, 762 (E.D. La. 1998) (finding that the plaintiff had standing because he fell within the definition of a "consignor" of goods).

**[5]** Although we recognize that members of certain classes often will be entitled to sue, the statute compels a more direct approach to standing. The crucial phrase under the current statute is "the person entitled to recover *under the receipt or bill of lading.*" 49 U.S.C. § 14706(a)(1) (emphasis added); *cf. Pa. R.R. Co.*, 243 U.S. at 583 (holding that, under the 1906 version, "[t]he crucial words [were] 'lawful holder' "). Accordingly, we look to the bill of lading, rather than an abstract classification system, to determine whether PPI would be entitled to sue Haas.

**[6]** A bill of lading is a contract between the carrier and the shipper. *Oak Harbor Freight Lines, Inc. v. Sears Roebuck & Co.*, 513 F.3d 949, 954 (9th Cir. 2008). As we have noted in other contexts, we apply general principles of contract interpretation when construing a bill of lading. *See Starrag v. Maersk, Inc.*, 486 F.3d 607, 616 (9th Cir. 2007) (interpreting a bill of lading in a maritime case). In this case, the bill of lading does not explicitly state who may sue, but OneBeacon offers a compelling argument that the bill of lading entitles PPI to sue.

**[7]** Throughout, the Conditions of Contract Carriage reference the rights and duties of the "shipper." As OneBeacon notes, the Conditions of Contract Carriage define "Shipper" as "the party from whom the shipment is received, the party who requested the shipment be transported by Haas Industries, and [sic] party having an interest in the shipment, and

any party who acts as an agent for any of the above." Because PPI is a "party having an interest in the shipment," it falls within the bill of lading's definition of "Shipper."

We have previously found standing in admiralty and air transport cases that raised similar questions about who may sue under a bill of lading. *See Lite-On Peripherals, Inc. v. Burlington Air Express, Inc.*, 255 F.3d 1189, 1193-94 (9th Cir. 2001) (air transport); *All Pac. Trading, Inc. v. Vessel M/V Hanjin Yosu*, 7 F.3d 1427, 1432 (9th Cir. 1993) (admiralty). In each of these previous cases, the carrier's bill of lading imposed obligations on the "Merchant" and defined "Merchant" to encompass "a broad range of parties." *Lite-On*, 255 F.3d at 1193. In each case we held that the bill of lading entitled the plaintiff to sue because the plaintiff fell within the bill of lading's definition of "Merchant." *Id.* at 1194; *All Pac.*, 7 F.3d at 1432. In *Lite-On*, we reasoned that a carrier "cannot seek to include a broad range of parties within the contract's definition of 'Merchant,' and then claim that one of those parties has no standing to enforce" the contract. 255 F.3d at 1194.

**[8]** Although the facts and circumstances of *Lite-On* and *All Pacific* are not identical to those in this case, we find the reasoning of the cases persuasive. We conclude that PPI would have standing to sue because it is a "Shipper" under the bill of lading. As PPI's subrogee, OneBeacon has standing to sue under the Carmack Amendment, so we reverse the district court's standing determination.

## IV

**[9]** Although we conclude that the bill of lading entitles PPI, and therefore OneBeacon, to sue, we agree with the district court that Haas effectively limited its liability through the same bill of lading. Under the Carmack Amendment, a carrier is generally liable "for the actual loss or injury to the property." 49 U.S.C. § 14706(a)(1). However, a carrier may

establish rates for the transportation of property . . . under which the liability of the carrier for such property is limited to a value established by written or electronic declaration of the shipper or by written agreement between the carrier and shipper if that value would be reasonable under the circumstances surrounding the transportation.

*Id.* § 14706(c)(1)(A).

**[10]** OneBeacon does not challenge the reasonableness of Haas's rates. OneBeacon argues only that Haas failed to limit its liability under the four-step test established in *Hughes Aircraft Co. v. N. Am. Van Lines, Inc.*, 970 F.2d 609, 611-12 (9th Cir. 1992). In *Hughes*, we held that to limit its liability under the Carmack Amendment, a carrier must

> (1) maintain a tariff in compliance with the requirements of the Interstate Commerce Commission; (2) give the shipper a reasonable opportunity to choose between two or more levels of liability; (3) obtain the shipper's agreement as to his choice of carrier liability limit; and (4) issue a bill of lading prior to moving the shipment that reflects any such agreement.

*Id.* (footnotes omitted).[4] "The carrier has the burden of proving that it has complied with these requirements." *Id.* at 612.

Since *Hughes* was decided in 1992, Congress has amended the statutory provisions underlying the *Hughes* test. We derived the first element of the *Hughes* test from the Carmack Amendment's provision that the Interstate Commerce Commission ("ICC") could authorize a motor carrier to establish

---

[4]This test is similar to the tests applied by other circuits. *See, e.g., Rohner Gehrig Co. v. Tri-State Motor Transit*, 950 F.2d 1079, 1081 (5th Cir. 1992) (en banc).

rates limiting its liability. *Id.* at 611 n.2. In 1994, Congress eliminated the requirement that carriers of non-household goods file tariffs with the ICC. Trucking Industry Regulatory Reform Act of 1994, Pub. L. No. 103-311, 108 Stat. 1673, 1683-85. Then in 1995, Congress added a requirement that carriers "provide . . . to the shipper, on request of the shipper, a written or electronic copy of the rate, classification, rules, and practices upon which any rate applicable to a shipment, or agreed to between the shipper and the carrier, is based." ICC Termination Act of 1995, Pub. L. No. 104-88, 109 Stat. 803, 907-10 (codified at 49 U.S.C. § 14706(c)(1)(B)).

**[11]** Haas argues that the 1994 and 1995 amendments eliminated the first element of the *Hughes* test. In contrast, OneBeacon asserts that the *Hughes* test remains fully intact because a carrier must still *maintain* a tariff even if it is not required to *file* the tariff.[5] We agree with the Eleventh Circuit that "the most that can be said about the latest version of the statute is that a carrier is now required to provide a shipper with the carrier's tariff if the shipper requests it, instead of the shipper filing its tariff with the now-defunct ICC." *Sassy Doll Creations, Inc. v. Watkins Motor Lines, Inc.*, 331 F.3d 834, 841 (11th Cir. 2003). Accordingly, we hold that the *Hughes* test remains the same with one exception: Instead of maintaining a tariff in compliance with the ICC, a motor carrier must now, at the shipper's request, provide the shipper with "a written or electronic copy of the rate, classification, rules, and practices upon which any rate applicable to a shipment, or agreed to between the shipper and the carrier, is based."[6] 49 U.S.C. § 14706(c)(1)(B).

**[12]** In this case, we conclude that Haas complied with all

---

[5]The parties seem to agree that for purposes of this case there is no significant difference between a rate schedule and a "tariff."

[6]Our holding comports with other circuits' interpretations of the 1994 and 1995 amendments. *See, e.g.*, *Emerson Electric Supply Co. v. Estes Express Lines Corp.*, 451 F.3d 179 (3d Cir. 2006).

requirements of the revised *Hughes* test. Contrary to OneBeacon's arguments, the statute does not require Haas to maintain rates in any particular format, nor does it require Haas to formally publish its rates. Instead, Haas need only provide copies of its "rate, classification, rules, and practices" at the "*request of the shipper.*" *Id.* (emphasis added). There is no evidence that either Omneon or PPI requested this information prior to shipping PPI's goods. Further, Haas provided evidence that it established standard rates, which incorporated the limitation of liability, as well as a separate excess valuation charge for full liability. The district court found that Haas had established rates for different levels of liability and would have made these rates available to customers upon request.[7] We see no clear error in this finding.

**[13]** Additionally, OneBeacon offers no basis for rejecting the district court's findings that Haas satisfied the last three elements of the *Hughes* test. To satisfy the second element, "the shipper [must have] had both reasonable notice of the liability limitation and the opportunity to obtain information necessary to make a deliberate and well-informed choice." *Hughes Aircraft Co.*, 970 F.2d at 612 (internal quotation marks omitted). The bill of lading and Conditions of Contract Carriage clearly state that Haas's liability is limited to $50 or $0.50 per pound in the absence of a higher declared value. The bill of lading also explains that Haas will be liable for the actual value of the shipment if the shipper declares the value and pays an excess valuation charge. We conclude that these statements provided sufficient notice of the limitation of liability and explained the procedure for rejecting that limitation.

---

[7]OneBeacon asserts that the district court eliminated the first element of the *Hughes* test. We note that the district court did in fact analyze the requirement of § 14706(c)(1)(B), although the court analyzed the requirement separately rather than incorporating it into the *Hughes* test as we have done. Regardless of the sequence of analysis, the outcome is the same.

**[14]** Because the bill of lading contains a written agreement to the limitation of liability, Haas also satisfied the third and fourth elements of the *Hughes* test. *Id.* OneBeacon argues that, to comply with the Carmack Amendment, a bill of lading must list the actual value of the goods as the default rate. It is true that if a carrier does not specify any limitation on liability in the shipping contract or bill of lading, then the carrier is responsible for "the actual loss or injury to the property." 49 U.S.C. § 14706(a)(1). But here the bill of lading expressly limits Haas's liability in the absence of a higher declared value. By signing the bill of lading without listing a declared value, the parties agreed to the limitation of liability.

OneBeacon raises several other arguments for reversal, including the district court's consideration of PPI's insurance policy. OneBeacon's arguments are not persuasive. Because Haas met each of the requirements under the *Hughes* test, the district court's reference to PPI's insurance coverage is at most irrelevant to the limitation of liability.

## CONCLUSION

We determine that OneBeacon has standing to sue, but Haas limited its liability under the Carmack Amendment. Because the district court found that there was no accord and satisfaction, and Haas did not appeal this finding, we remand the case so that the district court may enter judgment in favor of OneBeacon in an amount consistent with the limitation of liability.

REVERSED in part, AFFIRMED in part, and REMANDED.