**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| CERTAIN LLOYDS UNDERWRITERS SUBSCRIBING TO POLICY NUMBER MC-13159, <br><br> Plaintiff - Appellee, <br><br> v. <br><br> BALDWIN DISTRIBUTION SERVICES, LTD., a corporation, <br><br> Defendant - Appellant. | No. 12-55166 <br><br> D.C. No. 2:11-cv-03625-ODW-FMO <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the Central District of California
Otis D. Wright, II, District Judge, Presiding

Submitted August 8, 2013[**]
Pasadena, California

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Before: SILVERMAN and WARDLAW, Circuit Judges, and GEORGE, Senior District Judge.[***]

Fed-Ex subcontracted with Baldwin Distribution Services, Ltd. ("Baldwin") to transport cargo shipped by Netgear. Baldwin received the cargo but its truck overturned during transport, resulting in a total loss of the cargo. Certain Lloyds Underwriters Subscribing to Policy Number MC-13159 ("Lloyds"), who insured Netgear and became subrogated to its rights, brought this action against Baldwin pursuant to the Carmack Amendment, 49 U.S.C. §14706 *et seq*. The parties filed cross-motions on the amount of Baldwin's liability.[1] To limit expenses, the parties stipulated to have their cross-motions heard exclusively on seventeen stipulated facts and two documents. The district court ruled in favor of Lloyds, and Baldwin appeals. We affirm.

We have jurisdiction pursuant to 28 U.S.C. § 2107(a). We review the grant of summary judgment de novo. *Hughes Aircraft Co. v. North American Van Lines, Inc.*, 970 F.2d 609, 611 (9th Cir. 1992).

---

[***] The Honorable Lloyd D. George, Senior District Judge for the U.S. District Court for the District of Nevada, sitting by designation.

[1] Baldwin does not dispute that it is liable for the loss of Netgear's cargo.

The Carmack Amendment subjects a motor carrier transporting cargo in interstate commerce to absolute liability to the shipper for "actual loss or injury to property." 49 U.S.C § 14706(a)(1). However, a carrier may limit its liability "to a value established by written or electronic declaration of the shipper or by written agreement between the carrier and shipper if that value would be reasonable under the circumstances surrounding the transportation." 49 U.S.C. §14706(c)(1)(A). To effectively limit its liability, a carrier must: (1) at the shipper's request, provide the shipper with a written or electronic copy of applicable rates, (2) give the shipper a reasonable opportunity to choose between two or more levels of liability, (3) obtain the shipper's written agreement as to his choice of the carrier's liability limit, and (4) issue a bill of lading that reflects such agreement prior to moving the shipment. *Hughes Aircraft*, 970 F.2d at 611-12; *OneBeacon Ins. Co. v. Haas Industries, Co.*, 634 F.3d 1092, 1100 (9th Cir. 2011) (revising the first requirement established in *Hughes* to reflect a statutory change).

The extremely limited evidentiary record to which Baldwin stipulated precludes a finding as to any of these elements. Not one of the stipulated facts concerns whether the carrier would have provided Netgear with a copy of applicable rates if Netgear had so requested. None of the stipulated facts allow a conclusion that Netgear entered into a *written* agreement limiting carrier liability.

*Hughes Aircraft*, 970 F.2d at 612 n.3 ("This agreement must be in writing and must contain an 'inadvertence clause,' which specifies the 'released rate' and states that such a rate will apply unless the shipper expressly declares otherwise"). While Stipulated Fact No. 5 permits the conclusion that Netgear agreed to limit carrier liability pursuant to the Bill of Lading, the stipulation does not establish that such agreement was written. The Bill of Lading lacks any plain language suggesting that it: (a) is the written agreement limiting carrier liability, (b) states the terms of any such agreement, or (c) otherwise reflects any such agreement.

**AFFIRMED.**

Certain Lloyds Underwriters v. Baldwin Distribution Services, Ltd., 12-55166

SILVERMAN, Circuit Judge, dissenting:

I respectfully dissent.

Under the Carmack Amendment, the liability provisions of a bill of lading cover "(A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported." 49 U.S.C. § 14706. "[T]he liability of such participating carrier is fixed by the applicable valid terms of the original bill of lading." *Missouri, K. & T. Ry. Co. of Texas v. Ward*, 244 U.S. 383, 387 (1917).

The parties stipulated that the bill of lading limited the carrier's liability to the shipper to $5 per pound. That stipulation is dispositive and forecloses further debate about the bill of lading's liability limit. Because Baldwin operated under the bill of lading, its liability to the shipper – Netgear – was governed by the bill of lading. The separate Master Agreement between Baldwin and FedEx defined the liability of Baldwin to FedEx, not Baldwin to Netgear. I would reverse.