### AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, Plaintiff–Appellant,

v.

### ALASKA AIRLINES, INC., Defendant–Appellee.

No. 87–4167.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 3, 1988.

Withdrawn from Submission Dec. 2, 1988.

Resubmitted Sept. 29, 1989.

Decided March 14, 1990.

Jerry D. Anker, Air Line Pilots Association, Washington, D.C., for plaintiff-appellant.

John F. Aslin, Perkins Coie, Seattle, Wash., for defendant-appellee.

Before NELSON, BOOCHEVER and BRUNETTI, Circuit Judges.

NELSON, Circuit Judge:

Appellant Air Line Pilots Association ("ALPA" or "Union"), which represents Alaska Airlines ("Alaska") pilots in collective bargaining negotiations, seeks to challenge respondent's implementation of a new employee drug testing program. The district court denied ALPA's request for an injunction, finding that the dispute was a "minor" one under the Railway Labor Act ("the Act"), 45 U.S.C. §§ 151–188, and was therefore outside the scope of federal jurisdiction. In denying the injunction, the court also decided the merits of the case and entered summary judgment for the airline. While we agree that the denial of injunctive relief was proper, we do not believe that the case was ripe for summary judgment. Therefore, we affirm the denial of the injunction, vacate the entry of summary judgment, and remand for further development of the factual record.

### FACTUAL AND PROCEDURAL BACKGROUND

Since 1976, Alaska Airlines has, pursuant to company regulations, prohibited all illegal drug use by its employees, whether on or off company premises. Since 1947, all collective bargaining agreements between ALPA and Alaska have included a provision requiring pilots to undergo a physical examination at the company's re-

quest. Although ALPA asserts that prior to 1986 Alaska had never attempted to compel a pilot to obtain a drug test, it is undisputed that company-ordered physicals have always included urinalysis for other purposes.

In July 1984, Alaska began requiring that all applicants for employment undergo drug screening. The following year, that policy was expanded to require that all employees returning to work after an absence of more than 60 days be tested.[1] In November 1986, the airline proposed System Regulation 2.450 which was designed to "articulate and refine its existing and longstanding policy" against employee drug use. ALPA notified Alaska that it found the proposed regulation to be unacceptable and requested negotiations. Alaska refused to negotiate, and the proposed regulation became effective in December 1986.

System Regulation 2.450 provides, *inter alia,* that all new-hire candidates be tested and that all other employees be tested when they are believed to have a chemical dependency or abuse problem. The latter shall be removed from employment until all test results have been received. If the results are negative, the employees are reinstated with back pay. If the test is positive, the company will help provide rehabilitation. The results of the test and the employees' participation in a rehabilitation program are regarded as confidential and are not grounds for dismissal.[2] However, once returned to work, employees testing positive are subject to mandatory testing without notice.

On March 3, 1987, ALPA filed the instant action alleging that the drug testing program violated the collective bargaining agreement and thus was a "major" dispute under the Railway Labor Act. The Union sought a temporary restraining order and a preliminary injunction barring implementation of the program until the procedures

specified in the Act for major disputes had been exhausted. In the alternative, if the dispute were determined to be "minor," ALPA sought comparable injunctive relief until the dispute had been resolved through the arbitration procedures specified in the Act. On August 11, 1987, the district court found that the dispute was minor and denied the request for an injunction. Concluding that no other issues remained in the case, the court then entered summary judgment for the airline. ALPA now appeals from both orders.

## DISCUSSION

### I. *Standard of Review*

■ An order granting or denying a preliminary injunction is reviewed for abuse of discretion. *Los Angeles Memorial Colisuem Comm'n v. Nat'l Football League,* 634 F.2d 1197, 1200 (9th Cir.1980). A determination as to whether a dispute constitutes a mandatory subject of bargaining under the Railway Labor Act is, however, a question of law subject to *de novo* review. *Brotherhood of Locomotive Eng'rs v. Burlington Northern R.R. Co.,* 838 F.2d 1087, 1089 (9th Cir.1988). Therefore, because the district court's classification of the drug-testing dispute as "minor" rendered it a non-mandatory subject of bargaining, this determination on which the motion for preliminary injunction was denied and summary judgment was entered is reviewed *de novo.* The factual findings underlying this determination are judged, however, under a clearly erroneous standard. *See Int'l Molders' & Allied Workers' Local Union No. 164 v. Nelson,* 799 F.2d 547, 550 (9th Cir.1986).

### II. *"Major" versus "Minor" Dispute*

Labor relations between ALPA and Alaska are governed by the provisions of the Railway Labor Act. *See* 45 U.S.C. §§ 151– 188. The Act provides for two different

---

1. Although Alaska claims to have implemented the program in July 1985, ALPA argues that it was never notified as to the existence of any such policy and that no pilot was ever tested under it. The district court nevertheless concluded that such a policy did exist.

2. Reinstated employees who subsequently test positive on a drug screen will, however, be subject to discharge.

types of dispute resolution procedures depending upon the nature of the issue that is the subject of disagreement. Disputes concerning "changes in rates of pay, rules, or working conditions" are subject to non-compulsory adjustment procedures including "negotiation[s], submission to the National Mediation Board, voluntary arbitration, and, possibly, investigation by a special emergency board appointed by the President." *Burlington*, 838 F.2d at 1091. The Supreme Court has referred to these types of issues as "major" disputes since they "present the large issues about which strikes ordinarily arise." *Elgin, J. & E. Ry. Co. v. Burley*, 325 U.S. 711, 723–24, 65 S.Ct. 1282, 1289–90, 89 L.Ed. 1886 (1945), *aff'd on reh.*, 327 U.S. 661, 66 S.Ct. 721, 90 L.Ed. 928 (1946).

By contrast, disagreements "growing out of grievances or out of the interpretation or application of agreements" may be submitted by one of the parties to mandatory, binding arbitration. *See* 45 U.S.C. § 153(First)(i); *Elgin*, 325 U.S. at 727, 65 S.Ct. at 1291; *Burlington*, 838 F.2d at 1091. These disputes are referred to as minor disputes. *See Elgin*, 325 U.S. at 723, 65 S.Ct. at 1289.

The issue of the characterization of the instant dispute as "major" or "minor" is governed by the recently decided *Consol. Rail Corp. v. Ry. Labor Executives' Ass'n ("Conrail")*, —— U.S. ——, 109 S.Ct. 2477, 105 L.Ed.2d 250 (1989). Like the instant case, *Conrail* concerned a dispute between union and management over the inclusion of urinalysis drug screening as part of periodic and return-from-leave physical examinations. The Court classified the dispute as "minor" under the Railway Labor Act, finding petitioner's actions to be "arguably justified by the terms of the parties' collective-bargaining agreement." *Id.* 109 S.Ct. at 2482. Where, on the other hand, "the employer's claims are frivolous or ob-

viously insubstantial, the dispute is major." *Id.*

In determining whether Conrail's actions were justified by the agreement, the Court considered implied, as well as express, terms. The parties' "practice, usage and custom" were deemed significant in this regard. *Id.* at 2485 (citing *Transportation Union v. Union Pacific R. Co.*, 385 U.S. 157, 161, 87 S.Ct. 369, 371, 17 L.Ed.2d 264 (1966)). In examining past practice, the Court noted that the Union had never intervened in the details of Conrail's previous drug testing procedures. This acquiescence to unilateral standards promulgated by the corporation rendered the Union's argument that the absence of an express agreement or a "meeting of the minds" as to the new policy somewhat specious. 109 S.Ct. at 2488.

■ In the instant case, the Union failed to object to the airline's testing practices prior to the introduction of System Regulation 2.450. Appellant, in fact, concedes that it "was not opposed to drug and alcohol testing as such." Therefore, given the range of discretion exercised by the airline in conducting employee medical examinations in the past, we find that, based on the evidence presented on the motion for preliminary injunction, Alaska's claim that the recent expansion of urinalysis screening is consistent with the terms of the collective bargaining agreement is arguably justified and not frivolous or wholly insubstantial.

ALPA argues, in the alternative, that neither the contractual provision pertaining to employee physical examinations nor the company's existing rule concerning drug or alcohol use authorizes drug testing. These regulations, the Union contends, are concerned with an employee's fitness for duty. Drug tests, on the other hand, determine whether an employee uses drugs; the effect of such usage on job performance is an altogether different inquiry to which mere testing is not relevant.[3]

---

**3.** As this argument is based on a memorandum circulated by the general counsel of the National Relations Labor Board, it is of limited relevance here. Parallels drawn between the Railway Labor Act and the National Labor Relations Act "should be drawn with the utmost care

and with full awareness of the differences between the statutory schemes." *Chicago & N.W. Ry. v. United Trans. Union*, 402 U.S. 570, 579 n. 11, 91 S.Ct. 1731, 1736 n. 11, 29 L.Ed.2d 187 (1971).

This line of reasoning was foreclosed by the *Conrail* Court's vindication of the railroad's drug testing policy as a legitimate "medical" concern about the fitness of its employees. Indeed, the expansion of drug testing in physical examinations of both Conrail and Alaska employees recognizes "the relevance of drug use to [the] medical fitness" of the employees involved and invalidates any attempt to separate the two concepts. 109 S.Ct. at 2488. Accordingly, since the new drug testing policy is "arguably justified" by the airline's exercise of discretion under the collective bargaining agreement to monitor employee fitness for duty, we uphold the district court's determination that the evidence presented did not indicate a sufficient likelihood of ALPA prevailing on the merits to grant the preliminary injunction. Hence, the denial of appellant's application did not constitute an abuse of discretion.

## III. *Entry of Final Judgment*

As noted above, the district court essentially combined its decision on the preliminary injunction with a final decision on the merits. The court concluded that because it had determined that the dispute was minor for preliminary injunction purposes, it lacked subject matter jurisdiction to proceed further and was therefore required to enter judgment against ALPA.

 A district court may consolidate a preliminary injunction hearing with a trial on the merits. *See* Fed.R.Civ.P. 65(a)(2). However, where such action is contemplated, the court should provide the parties with "clear and unambiguous notice [of the intended consolidation] either before the hearing commences or at a time which will afford the parties a full opportunity to present their respective cases." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981) (quoting *Pughsley v. 3750 Lake Shore Drive Coop. Bldg.*, 463 F.2d 1055, 1057 (7th Cir.1972)). It is undisputed that, in the instant case, the district court failed to notify the parties of its intention in this regard.[4]

Alaska argues that *Camenisch* is inapposite because the district court did not decide the merits of the case, *i.e.* the legitimacy of Alaska's drug testing policy. Such decision, the airline contends, remains in the hands of the System Board of Adjustment. This argument is unavailing. The merits of the instant action do not concern the legitimacy of the airline's policy, but rather the classification of the drug testing dispute as "major" or "minor" under the collective bargaining agreement. The district court unquestionably decided the merits of *this* issue, and did so on a motion for preliminary injunction without providing adequate notice to the parties.

Alaska's final argument asserts that ALPA was not harmed by the district court's consolidation of the merits and the issue of preliminary injunctive relief. The airline contends that there was no need for discovery since ALPA knew the history of its bargaining relationship with Alaska and, at any rate, ALPA had nine months before filing suit in which to get better prepared.

An examination of the record indicates, however, that the case would almost certainly benefit from further discovery. It is unclear, for example, the extent to which returning pilots were tested under the 1985 program and the extent to which ALPA was aware of this program. These *factual* determinations may ultimately influence the proper classification of the drug testing dispute.

Thus, and in sum, although the district court's findings were not clearly erroneous, upon further discovery the factual conclusions might change in deciding the merits of the case. Furthermore, the fact that ALPA had several months to prepare be-

---

**4.** A district court might also convert a decision on a preliminary injunction into a final disposition of the merits by granting summary judgment on the basis of the factual record available at the preliminary injunction stage. However, a court could not properly enter summary judg-ment where the notice and hearing requirements of Fed.R.Civ.P. 56 have not been followed. Since it is undisputed that the district court's decision did not comply with these requirements, the court's judgment cannot be sustained on this theory.

fore filing this suit does not obviate the requirement of proper notice to the parties before entry of final judgment. Accordingly, the district court's entry of final judgment against ALPA is vacated, and the case is remanded for further proceedings.

AFFIRMED in part, REVERSED in part, and REMANDED.

BRUNETTI, Circuit Judge, concurring in part and dissenting in part:

I dissent from the majority opinion because it characterizes the decision on whether a dispute is "minor," under the Railway Labor Act (the "RLA"), as a decision on the merits. This decision is clearly jurisdictional, not a decision on the merits. Once the district court determined, as a matter of law, that the dispute was minor, the district court properly held that it had no jurisdiction to consider the merits of appellants' claim or to grant injunctive relief under the RLA. The district court also properly denied appellant's request for an injunction based on traditional, equitable principles. Accordingly, I would affirm the district court's decision in all respects.

I. *Appellant's Two Theoretical Bases For Relief.*

Plaintiff-appellant Air Line Pilots Association ("ALPA") based its motion for a preliminary injunction on two alternate theories. First, ALPA argued that the controversy regarding the new drug testing program is a "major dispute," under the RLA, and that the RLA requires Alaska Airlines, Inc. ("Alaska") to bargain with ALPA before implementing the program. If ALPA were to prevail on this theory, the RLA would authorize the district court to enjoin Alaska from implementing its drug testing program during the required period of bargaining.

Second, ALPA argued that, even if the dispute is "minor," (and therefore not subject to a status quo injunction purely on the basis of the RLA) the court should enjoin Alaska's implementation of the drug testing program based on traditional, equitable principles. These principles generally re-

quire a showing of "irreparable injury" and probability of success on the merits.

ALPA's two theories involve entirely different issues and were analyzed separately by the district court. Thus, I will discuss them separately.

II. *Whether a Dispute Is "Major" Or "Minor" Is A Jurisdictional Issue.*

Labor disputes under the RLA are divided into "major" disputes and "minor" disputes. A major dispute arises where a carrier seeks to *"change* the rates of pay, rules, or working conditions of its employees, as a class *as embodied in agreements except in the manner prescribed in such agreements."* 45 U.S.C.A. § 152 Seventh (West 1989) (emphasis added). These disputes occur where "there is no [collective bargaining] agreement or where it is sought to change the terms of one, and therefore *the issue is not whether an existing agreement controls the controversy."* Elgin, J. & E. Ry. Co. v. Burley, 325 U.S. 711, 723, 65 S.Ct. 1282, 1289, 89 L.Ed. 1886 (1945) (emphasis added).

To resolve major disputes, the parties must undergo a lengthy process of bargaining and mediation. The employer is obligated under the RLA to maintain the status quo (including the current rates of pay, rules, and working conditions) during the bargaining process. 45 U.S.C.A. § 152 Seventh (West 1989). Based on this provision of the RLA, the district courts have jurisdiction to enjoin any violation of the status quo pending completion of the required procedures, without the customary showing of irreparable injury. *Consolidated Rail v. Railway Labor Exec. Ass'n,* —— U.S. ——, 109 S.Ct. 2477, 2480, 105 L.Ed.2d 250 (1989) (*"Conrail"*).

In contrast, a minor dispute arises where the employer seeks to alter the rates of pay, rules, or working conditions in a manner that is "arguably justified by the terms of the parties' collective-bargaining agreement." *Conrail,* 109 S.Ct. at 2482. These disputes involve "the *interpretation or application* of agreements concerning rates of pay, rules, or working conditions." 45 U.S.C.A. § 152 Sixth (emphasis added).

To resolve minor disputes, the parties must submit to binding arbitration before, and under the exclusive jurisdiction of, an adjustment board established by the airline and the unions (the "Board"). *Conrail,* 109 S.Ct. at 2481. The employer is not required by the RLA to maintain the status quo pending the Board's decision. *Id.* Thus, for minor disputes, the RLA does not give the district court jurisdiction to enjoin violations of the status quo without the customary showing of irreparable harm. *Id. Conrail* leaves open the question whether the court can issue a status quo injunction for a minor dispute upon a showing of irreparable harm. *Id.* at n. 5. This alternative ground for relief will be discussed in section III.

In summary, "major disputes seek to create contractual rights, minor disputes to enforce them." *Id.* The RLA requires the parties to bargain for the creation of rights and, accordingly, grants the federal courts subject matter jurisdiction to enjoin any attempt to unilaterally force conditions on the opposing side. However, once the parties have reached a binding agreement, any disputes that are arguably controlled by the agreement are within the exclusive jurisdiction of the Board. The federal courts no longer have jurisdiction, under the RLA, to issue status quo injunctions.

### A.

Since the question whether a dispute is "minor" is jurisdictional in nature, and involves no consideration of the merits of the dispute itself, Rule 65(a) is not applicable to the district court's decision on this issue.

A federal court is entitled, and obligated, to make jurisdictional decisions *sua sponte. See* 13 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure Section 3522 (1984).

Any doubt whether a court can decide that a dispute is minor without deciding the merits of the dispute was resolved by *Conrail,* which upheld a district court's dismissal of a minor dispute for lack of subject matter jurisdiction, while expressing no opinion on who should prevail on the merits

of the dispute. *See Conrail,* 109 S.Ct. at 2489.

In the present case, the district court concluded as a matter of law that the dispute was *minor,* because Alaska's new drug testing policy was expressly and *arguably* predicated on the *terms of the existing agreement* between Alaska and ALPA. Since only a minor dispute was involved, the court properly concluded that it lacked subject matter jurisdiction to consider the merits of the case or to issue a preliminary injunction, at least without a showing of irreparable injury. The court correctly held that ALPA and Alaska must resolve their differences through arbitration (although the district judge did not use the word "jurisdiction," the implication is clear). The court did not consider the merits of the dispute itself. Thus, the court did *not* consolidate the preliminary injunction hearing with the trial of the action *on the merits,* and Rule 65(a)(2) is not applicable.

### B.

Since the question whether a dispute is "minor" is a question of law, and depends only on whether the employer's action is "arguably justified" by the terms of the collective bargaining agreement, further discovery would be of no value.

The question whether a dispute is "minor" is a question of law, not of fact. *Brotherhood of Locomotive Eng'rs v. Burlington,* 838 F.2d 1087, 1089 (9th Cir.1988). Moreover, the question is purely a matter of contractual interpretation; that is, whether the employer's action is arguably justified *by the terms of the collective bargaining agreement. Conrail,* 109 S.Ct. at 2482. The district court need not, and has no jurisdiction to, decide whether the employer's action *is* permissible under the agreement. Rather, the district court decides only whether, as a matter of law, the agreement will bear the employer's interpretation.

The district court had the collective bargaining agreement before it, and properly based its decision on the terms of the agreement. In fact, the majority agrees with the district court's conclusion on this issue of law. Thus, allowing ALPA more

time for further discovery cannot affect the district court's decision in any way, and there is no need to remand for further discovery.

### III. *District Court's Denial of Preliminary Injunction.*

Having determined that the dispute was minor, the district court was clearly without jurisdiction to decide the merits of the case or to issue any permanent injunction. It is not clear whether the court had jurisdiction to issue a preliminary injunction, pending the decision on the merits by the Board, based on the traditional showing of "irreparable harm." *See Conrail,* 109 S.Ct. at 2481 n. 5.

The district court went on, however, to consider this issue and found that ALPA had not demonstrated any significant probability of success on the merits (before the Board). The court did not find that ALPA would suffer any "irreparable injury" if the injunction were not granted, and found that any hardships to ALPA did not outweigh the hardships to Alaska if the injunction were granted. For these reasons, the district court denied ALPA's motion for a preliminary injunction pending completion of arbitration and, properly concluding that no other issues remained, granted summary judgment to Alaska.

For the purposes of this case, it does not really matter whether the district court had jurisdiction to issue a traditional preliminary injunction. The court denied the injunction anyway. Moreover, whether or not the court was entitled to decide this issue, it never consolidated any decision on the merits with its decision on ALPA's preliminary injunction, and at no time did the district court decide the merits of ALPA's claim. Thus, Rule 65 is entirely inapplicable to this case.

The district court's decision should be affirmed.