# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ASSOCIATION OF FLIGHT
ATTENDANTS, CWA, AFL-CIO,
    *Plaintiff-Appellee,*

v.

MESA AIR GROUP, INC.; MESA
AIRLINES, INC.; FREEDOM AIRLINES
INC.; GO AIRLINES, INC.,
    *Defendants-Appellants.*

No. 07-17232

D.C. No.
CV-07-00921-PHX-
ROS

OPINION

Appeal from the United States District Court
for the District of Arizona
Roslyn O. Silver, District Judge, Presiding

Argued and Submitted
February 11, 2009—Stanford, California

Filed June 1, 2009

Before: Dorothy W. Nelson, William A. Fletcher and
Richard C. Tallman, Circuit Judges.

Opinion by Judge William A. Fletcher

## COUNSEL

Edward Gilmartin, Deirdre E. Hamilton, ASSOCIATION OF FLIGHT ATTENDANTS-CWA, AFL-CIO, Washington,

D.C., Michael J. Keenan, WARD, KEENAN & BARRETT, Phoenix, Arizona, for the plaintiff-appellee.

Joseph L. Manson, III, Marc A. Antonetti, BAKER & HOSTETLER, LLP, Washington, D.C., Stephanie J. Quincy, Bennett Evan Cooper STEPTOE & JOHNSON, LLP, Phoenix, Arizona, for the defendants-appellants.

## OPINION

W. FLETCHER, Circuit Judge:

Defendant Mesa Airlines ("Mesa") appeals the grant of a preliminary injunction in favor of Plaintiff Association of Flight Attendants ("AFA"). AFA and Mesa are parties to collective bargaining agreements ("CBAs") that have expired. They are now in the process of bargaining for new agreements. AFA brought this suit after Mesa changed the applicable Federal Aviation Administration ("FAA") regulations ("FARs") for its scheduling of flight attendants. Previously, Mesa had used those designed for flight crews; after the change, it used those designed for flight attendants.

AFA contends that the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.*, prevents Mesa's unilateral change to the union's status quo working conditions. It contends that its disagreement with Mesa over the change is a "major dispute" within the meaning of the RLA, and that it may therefore seek an injunction in federal district court against the change. Mesa contends that the terms of the parties' CBAs permit it to make the change, and that its disagreement with AFA is a "minor dispute" within the meaning of the RLA for which the exclusive remedy is binding arbitration.

The district court held that the disagreement is a major dispute and granted a preliminary injunction against Mesa. Mesa

has brought an interlocutory appeal over which we have appellate jurisdiction under 28 U.S.C. § 1292(a)(1). We hold that the dispute is a minor dispute within the meaning of the RLA. We therefore vacate the preliminary injunction and remand to the district court with directions to dismiss for lack of subject matter jurisdiction.

## I.   Background

AFA and Mesa are parties to two CBAs that ran through June 13, 2006. The CBAs set forth the parties' rights and obligations with respect to the employment of AFA members by Mesa. Under an RLA-mandated process, the parties have been in negotiations and mediation to replace these CBAs. Until new CBAs can be agreed upon, the old CBAs have continued in effect, as mandated by Section 6 of the RLA. 45 U.S.C. § 156.

This case arises out of a dispute over the application of FAA regulations to the scheduling of flight attendants. The FAA has promulgated regulations limiting the allowable work schedules for various airline employees, titled "Flight Time Limitations and Rest Requirements," or FARs. The regulations include FARs for flight crewmembers, 14 C.F.R. § 121.471 ("Pilot FARs"), and flight attendants, *id.* § 121.467 ("Flight Attendant FARs"). The Flight Attendant FARs permit an airline to schedule its flight attendants according to either the guidelines established in the Flight Attendant FARs or those in the Pilot FARs. *Id.* § 121.467(c).

During the duration of the CBAs, from 1995 through 2006, Mesa scheduled its flight attendants in accordance with the Pilot FARs. On September 19, 2006, AFA presented a proposal to Mesa seeking to amend the CBAs by incorporating specific duty time and rest provisions in the contracts. Mesa rejected this proposal. In 2007, Mesa unilaterally adjusted scheduling for flight attendants to accord with the Flight Attendant FARs rather than the Pilot FARs.

AFA filed suit under the RLA to enjoin Mesa from implementing this change until bargaining had been exhausted. Mesa filed a motion to dismiss for lack of subject matter jurisdiction, which the district court denied on October 1, 2007. Mesa filed a motion to reconsider on October 16, 2007, presenting new evidence on the question of subject matter jurisdiction. The district court granted AFA's motion for a preliminary injunction on October 17, 2007, and denied AFA's motion for reconsideration on December 13, 2007. The district court held that the CBAs contain an implied term that applies the Pilot FARs to flight attendants, and that Mesa cannot now unilaterally alter this term.

Mesa filed this interlocutory appeal.

## II.　　Standard of Review

We review de novo, as a question of law and of subject matter jurisdiction, whether a dispute is major or minor under the Railway Labor Act. *Polich v. Burlington N., Inc.*, 942 F.2d 1467, 1469 (9th Cir. 1991); *Air Line Pilots Ass'n, Int'l v. Alaska Airlines, Inc.* ("*Alaska Airlines*"), 898 F.2d 1393, 1395 (9th Cir. 1990). We also review de novo the construction of a CBA. *Carpenters Health & Welfare Trust Fund for Cal. v. Bla-Delco Constr., Inc.*, 8 F.3d 1365, 1367 (9th Cir. 1993).

## III.　　Discussion

**[1]** Labor relations between Mesa and AFA are governed by the RLA. The RLA mandates a long process of negotiation and mediation before unions and common carriers are permitted to use their various economic weapons to pressure the other side to reach an agreement. 45 U.S.C. § 151 *et seq.* As relevant to this case, the RLA provides two separate dispute resolution procedures that the parties to a labor negotiation can invoke during the negotiation process. *Consol. Rail Corp. v. Ry. Labor Executives' Ass'n* ("*Conrail*"), 491 U.S. 299,

302-04 (1989). One set of procedures applies to what are labeled "major disputes" between the parties. The other set applies to what are labeled "minor disputes." *Id.*

**[2]** Major disputes generally result from attempts by labor or management to impose new obligations or create new rights. *Id.* at 302. Major disputes must be settled through an extended bargaining process. *Id.* at 302-03. Federal district courts may issue injunctions to freeze the status quo during the bargaining process over such disputes. *Id.* at 303; *Alaska Airlines*, 898 F.2d at 1396. Minor disputes, on the other hand, generally result from attempts to enforce existing contractual obligations and rights. *Conrail*, 491 U.S. at 302; *Alaska Airlines*, 898 F.2d at 1396. Such disputes are subject to exclusive binding arbitration before the National Railroad Adjustment Board. *Conrail*, 491 U.S. at 303-04; *Alaska Airlines*, 898 F.2d at 1396.

When a dispute is minor, the parties have no duty to maintain the status quo. *Bhd. of Locomotive Eng'rs v. Burlington N. R.R.*, 838 F.2d 1102, 1111 (9th Cir. 1988) (Pregerson, J., concurring). Minor disputes are not necessarily unimportant or insignificant. Indeed, minor disputes can involve disagreements of great practical or economic significance. *Int'l Bhd. of Teamsters v. Sw. Airlines Co.*, 875 F.2d 1129, 1133 (5th Cir. 1989) (en banc).

The Supreme Court has elaborated on the distinction between major and minor disputes. Minor disputes

> contemplate[ ] the existence of a collective agreement already concluded or, at any rate, a situation in which no effort is made to bring about a formal change in terms or to create a new one. The dispute relates either to the meaning or proper application of a particular provision with reference to a specific situation or to an omitted case. In the latter event the claim is founded upon some incident of the employ-

ment relation, or asserted one, independent of those covered by the collective agreement, *e.g.*, claims on account of personal injuries. In either case the claim is to rights accrued, not merely to have new ones created for the future.

*Conrail*, 491 U.S. at 303 (quoting *Elgin, Joliet & E. Ry. Co. v. Burley*, 325 U.S. 711, 723 (1945)).

**[3]** The distinction between major and minor disputes "looks to whether a claim has been made that the terms of an existing agreement either establish or refute the presence of a right to take the disputed action. The distinguishing feature of such a case is that the dispute may be conclusively resolved by interpreting the existing agreement." *Id.* at 305. When "an employer asserts a contractual right to take the contested action, the ensuing dispute is minor if the action is arguably justified by the terms of the parties' collective-bargaining agreement. Where, in contrast, the employer's claims are frivolous or obviously insubstantial, the dispute is major." *Id.* at 307. The burden to establish that an action is "arguably justified" by the terms of the CBA is "relatively light." *Id.* When in doubt, courts construe disputes as minor. *Bhd. of Locomotive Eng'rs*, 838 F.2d at 1111.

We hold that Mesa has carried its burden to show that its action is "arguably justified" by the terms of the existing CBAs. We therefore hold that the dispute is minor and subject to the exclusive arbitral remedy of the RLA.

**[4]** The CBAs at issue refer only to "the F.A.R.s" or "the applicable FAR maximum." The provisions within the CBAs do not explicitly establish which of the two FARs is to be applied to flight attendant schedules. Residual authority clauses in the CBAs provide that "the Company retains all authority and rights to manage its operations and direct its Flight Attendants work force" to the extent not "expressly restricted by the CBA." "Management rights" clauses in the

CBAs reserve to Mesa "without limitation" the right to "establish and, from time to time, amend, suspend or revoke rules, regulations and procedures . . . [and] to establish new routes, services, schedules and areas of service."

Mesa argues that the ambiguity in the CBAs over which FARs apply to flight attendant schedules, combined with the explicit delegation of residual and management powers to the employer, gives Mesa the authority to change the applicable FARs unilaterally. Mesa supports this argument with testimony of Patricia Dravis, who negotiated one of the CBAs on behalf of AFA. Dravis testified that she believed the CBA gave Mesa the authority to switch from the Pilot FARs to the Flight Attendant FARs without consent of the AFA.

[5] Two other circuits have held in similar circumstances that the existence of a broad management rights clause is enough to create an "arguable" question of contract interpretation when a CBA does not explicitly establish rules or policies governing working conditions. In *Airline Professionals Ass'ns of the International Brotherhood of Teamsters, Local Union No. 1224, AFL-CIO v. ABX Air, Inc.*, 274 F.3d 1023 (6th Cir. 2001), management unilaterally imposed a policy of random searches of employees in order to prevent theft. The union objected to these searches, eventually filing suit in federal court seeking an injunction against implementation of this policy. The Sixth Circuit held that, although "random searches are not specifically addressed by the collective bargaining agreement," the CBA gave management "discretion with respect to the hiring, firing, promoting, supervising, planning, and other management functions, except as limited by the collective bargaining agreement and public law." *Id.* at 1029. Thus, it was "at least arguable that the implied terms of the agreement permit [management] to unilaterally implement random searches." *Id.*

[6] In *International Brotherhood of Teamsters v. Southwest Airlines Co.*, 875 F.2d 1129 (5th Cir. 1989) (en banc), man-

agement unilaterally implemented a detailed drug and alcohol testing policy. The Fifth Circuit held that "[o]n its face" a clause providing that employees "shall be governed by all Company rules, regulations and orders" not in conflict with the terms of the agreement "at least *arguably* grants management the right to enforce its policy by unilaterally promulgating rules, regulations, and orders" to govern employees. *Id.* at 1135. Both of these decisions reinforce our view that the management rights clauses in the CBAs here arguably provide justification for Mesa to unilaterally interpret and apply the ambiguous contractual language concerning the FARs.

AFA makes two arguments. First, it argues that, because the Pilot FARs are the status quo working conditions under which Mesa's flight attendants operated, they cannot be changed unilaterally by management. AFA relies on *Detroit & Toledo Shore Line Railroad v. United Transportation Union* ("*Shore Line*"), 396 U.S. 142 (1969). In *Shore Line*, however, neither party made an argument based on the terms of a CBA. *Id.* at 147-48. Instead, management had changed longstanding working conditions, and the union contended that this arguably changed the status quo. *Id.* Management responded by contending that the status quo was not incorporated in any CBA, and that the union was therefore not entitled to an injunction to prevent management from making the change. *Id.* The Court held that, in the absence of any contention based on the CBA from either side, the union could seek an injunction preventing management from changing the prior practice. *Id.*

AFA relies upon *Shore Line* to argue that any status quo working condition — whether covered by a CBA or not — is protected by the RLA from unilateral change by management, and that federal courts can enjoin management from making such a unilateral change. We do not read *Shore Line* so broadly. AFA's interpretation of *Shore Line* would eliminate any distinction between major and minor disputes in cases where the union contends that management's action violates

established practice, including cases where the CBA arguably (or even clearly) allows management to change the status quo.

AFA's argument also ignores the Supreme Court's decision in *Conrail*. In that case, the union relied on *Shore Line* to make an argument similar to AFA's argument in this case. The union argued that the RLA "provides a status quo obligation applicable to all minor disputes." *Conrail*, 491 U.S. at 304 n.5. The Court rejected this argument, holding that in the case of minor disputes there is no "general statutory obligation on the part of an employer to maintain the status quo pending the Board's decision." *Id.* Before a federal court can even reach the analysis in *Shore Line* — that is, before a court can decide whether something is an established practice protected by the status quo — it must find that the disagreement in the case is a major dispute. We do not read *Conrail* to overrule *Shore Line* on this point.

Second, AFA argues (and the district court agreed) that the application of the Pilot FARs to flight attendant schedules constitutes an implied term of the CBAs. This argument depends on a conclusion that the CBAs unambiguously contain such an implied term. The existence of such an implied term, if conclusively proven, would indeed prevent Mesa from changing from the Pilot FARs to the Flight Attendant FARs. However, the existence of such an implied term is not clearly established in the record of this case. Therefore, the existence of such a term is a matter of contractual interpretation that the RLA leaves exclusively to the National Railroad Adjustment Board.

**[7]** The district court found that "[a] thirteen-year history of consistently relying on the Pilot FARs qualifies as an 'established and recognized custom between the parties.'" In so finding, the district court relied on *Brotherhood Railway Carmen v. Missouri Pacific Railroad* ("*Carmen*"), 944 F.2d 1422, 1429 (8th Cir. 1991). However, *Carmen* actually suggests the opposite result. In *Carmen*, the employer argued that a dispute

was "arguably justified" by the terms of a contract on the ground that past practices could create an implied term in the agreement. *Id.* at 1426. The Eighth Circuit wrote that implied terms can arise in CBAs through past practices. *Id.* at 1429 ("It is well established that collective bargaining agreements may include implied as well as express terms."). But it held that in the case before it, the existence of such an implied term was debatable and should therefore be decided in arbitration. *Id.* ("While it is indeed arguable that practices involving other types of rail cars at other locations may not establish implied agreements covering the repair of freight cars at the locations at issue, the opposite surely is also arguable."). The case before us appears in the same posture. Past practices under the CBAs may or may not have created an implied term, and there is evidence to support contentions on both sides. The existence of an implied term is therefore arguable and must be decided in arbitration.

## Conclusion

Mesa has carried its burden of showing that its change from the Pilot FARs to the Flight Attendant FARs was arguably justified by the CBAs. Therefore, this dispute is minor within the meaning of the RLA, and must be decided in arbitration before the National Railroad Adjustment Board.

We **VACATE** the district court's preliminary injunction and **REMAND** to the district court with direction to **DISMISS** for lack of subject matter jurisdiction.