In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-2291

INTERNATIONAL BROTHERHOOD OF
TEAMSTERS AIRLINE DIVISION,

*Plaintiff-Appellee*,

*v.*

FRONTIER AIRLINES, INC., and
REPUBLIC AIRWAYS HOLDING, INC.,

*Defendants-Appellants*.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 10-CV-203—**Lynn Adelman**, *Judge*.

ARGUED OCTOBER 29, 2010—DECIDED DECEMBER 13, 2010

Before POSNER, KANNE, and WILLIAMS, *Circuit Judges*.

POSNER, *Circuit Judge*. This appeal by the defendant
airlines from the grant of a preliminary injunction to a
labor union presents a novel question under the Rail-
way Labor Act, 45 U.S.C. §§ 151 *et seq.*, which despite its
name also governs labor relations in the airline industry.

On October 1 of last year, Republic Airways, a holding company that already owned a number of airlines, added Frontier Airlines to its collection. Soon afterward it announced that it was shifting maintenance work on Frontier's aircraft to Milwaukee—where maintenance is performed by nonunion workers—from Denver, where Frontier's maintenance workers (whom we'll call "mechanics," although some are not) are represented by the Teamsters Union. The lawfulness of Republic's shifting the maintenance work to Milwaukee is not questioned, but the union contends that its collective bargaining agreement with Frontier determines the rights of Frontier mechanics affected by the shift.

Republic denies this. It contends that the airlines that it owns, although separately incorporated, constitute a "single transportation system" or "single carrier," within the meaning of the Railway Labor Act. These are not statutory terms, but rather glosses on the statute that guide delineation of the bargaining unit (the unit of worker representation—a "craft" or "class" in RLA-speak). "Where a railroad system is composed of a number of subsidiary corporations, employees have been in dispute as to whether one vote should be taken of a craft or class on the whole system or whether the subsidiary corporations are carriers within the meaning of the Act whose employees are entitled to separate representation. The [National Mediation] Board has ruled generally that where a subsidiary corporation . . . keeps its own payroll and seniority rosters, it is a carrier as defined in the Act, and its employees are entitled to representation separate from other

carriers who may be connected with the same railroad system. [But] if the operations of a subsidiary are jointly managed with operations of other carriers and the employees have also been merged and are subject to the direction of a single management, then the larger unit of management is taken to be the carrier rather than the individual subsidiary companies." *In re Representation of Employees of Donora Southern R.R.*, 2 N.M.B. 80, 83-84 (1952); see *National Mediation Board Representation Manual* § 19.501 (updated through Sept. 17, 2010), listing eight nonexclusive factors that are "indicia of a single transportation system," including combined routes, centralized labor and personnel operations, and even standardized uniforms.

Because a single transportation system is treated as a single employer, with the result that all system employees who do the same type of job are deemed members of the same bargaining unit, if Republic's assemblage of airlines constitutes a single transportation system then all the mechanics employed by Frontier and represented by the Teamsters Union are members of a unit composed of all the system's mechanics. In that event the union, because it does not represent a majority of them, is not authorized to represent any of them. See 45 U.S.C. § 152 Fourth; *Summit Airlines, Inc. v. Teamsters Local Union No. 295*, 628 F.2d 787, 795 (2d Cir. 1980). If on the other hand Republic is not a single transportation system, Frontier's mechanics constitute a separate bargaining unit and the union is its lawful representative. 45 U.S.C. § 152 Ninth; see, e.g., *In re Applications of International Brotherhood of*

*Teamsters & Association of Flight Attendants*, 37 N.M.B. 148, 167-68 (2010).

The National Mediation Board, which the Act makes responsible for resolving representation disputes, had prior to Frontier's acquisition by Republic certified the Teamsters Union to represent Frontier's mechanics. Until that certification is rescinded, Republic is forbidden to alter their pay, work rules, or working conditions unilaterally, as it did, without precipitating a protracted negotiation with the Teamsters Union. 45 U.S.C. §§ 152 Seventh, 156. Republic doesn't want to go that route, which anyway may have been unavailable because, as we'll see, a representation dispute is resolved by a different procedure. So the district court has issued a preliminary injunction forbidding any unilateral alteration in the pay, work rules, or working conditions of the Frontier mechanics unless and until the National Mediation Board, the implementer of that different procedure, rules that the Teamsters Union is not their lawful representative.

Disputes over the meaning of a collective bargaining agreement governed by the Railway Labor Act—"minor disputes" in RLA jargon—are subject to compulsory arbitration. *Union Pacific R.R. v. Brotherhood of Locomotive Engineers*, 130 S. Ct. 584, 591-93 (2009). All other disputes (with one exception—critical to this case, as we're about to see) must be referred to a bargaining and mediation process prescribed by the Act, as in section 6, 45 U.S.C. § 156 (just the kind of process that Republic doesn't want to and might not be allowed to invoke, as we noted). A federal district court can issue an injunction

to preserve the status quo (that is, the conditions of employment on the eve of the action that precipitated the dispute) until the process is completed. *Consolidated Rail Corp. v. Railway Labor Executives' Ass'n*, 491 U.S. 299, 302-04 (1989); *Detroit & Toledo Shore Line R.R. v. United Transportation Union*, 396 U.S. 142, 148-50 (1969); *Burlington Northern R.R. v. United Transportation Union*, 862 F.2d 1266, 1272 (7th Cir. 1988); *Association of Flight Attendants v. Mesa Air Group, Inc.*, 567 F.3d 1043, 1047 (9th Cir. 2009). Notwithstanding the Norris-LaGuardia Act, 29 U.S.C. §§ 101 *et seq.*, injunctions to compel compliance with the Railway Labor Act are permissible even when they enjoin collective action by workers that could not, consistently with the Norris-LaGuardia Act, be enjoined in industries not subject to the RLA. *Burlington Northern R.R. v. Brotherhood of Maintenance of Way Employees*, 481 U.S. 429, 445 (1987), and cases cited there; ABA Section of Labor & Employment Law, *The Railway Labor Act* 362-73 (2d ed. 2005 & Supp. 2009). Anyway the injunction issued by the district court is directed against the employer, not the union.

The Teamsters Union doesn't claim that its collective bargaining agreement with Frontier contains any provision relating to the union's right to represent Frontier's mechanics if Frontier becomes part of a single transportation system. Republic's insistence that Frontier has become part of such a system, thus enabling Republic to alter the working conditions set forth in the agreement, has therefore precipitated—one might think—a major dispute. But it is a dispute over who (if anyone) is the legitimate representative of a carrier's workers. A

representation dispute turns on "*whether or by what representative* employees are represented for purposes of collective bargaining. In some contexts, representation disputes also include issues concerning the identity of a carrier (e.g., one or more companies functioning as a single carrier) or the scope of a craft or class for bargaining." ABA Section of Labor & Employment Law, *supra*, at 18. (We have italicized the passage that bears directly on this case.) Section 2 Ninth of the Railway Labor Act, 45 U.S.C. § 152 Ninth, has been interpreted to give the National Mediation Board exclusive jurisdiction to resolve such disputes. *General Committee of Adjustment v. Missouri-Kansas-Texas R.R.*, 320 U.S. 323, 336 (1943); *United Transportation Union v. Gateway Western Ry.*, 78 F.3d 1208, 1213 (7th Cir. 1996). That is the same body that mediates major disputes. Yet representation disputes are conventionally said to be neither "major" nor "minor."

The district judge thought it important that he *not* characterize the parties' dispute as a representation dispute—though it is one—because some cases say that a court that grants a preliminary injunction in a representation dispute resolves the dispute and by doing so tramples on the National Mediation Board's turf. *United Transportation Union v. Gateway Western Ry., supra*, 78 F.3d at 1213-14; *International Brotherhood of Teamsters v. Texas Int'l Airlines, Inc.*, 717 F.2d 157, 161 (5th Cir. 1983). That could be said in any case in which a preliminary injunction is issued—the injunction "resolves" the dispute, at least provisionally. The statements in these cases cannot be considered authoritative.

The Supreme Court, consistent with its ruling that district courts can issue injunctions to enforce the Railway Labor Act—not, however, to resolve with finality any actual labor disputes but merely to maintain the status quo ante until they are finally resolved by the mechanisms ordained by the Act—has declared that preliminary injunctions may be issued in minor disputes despite the exclusive jurisdiction over such disputes of the National Railroad Adjustment Board or its counterpart in the airline industry—the system boards of adjustment. *Brotherhood of Locomotive Engineers v. Missouri-Kansas-Texas R.R.*, 363 U.S. 528, 530-35 (1960); *National Railway Labor Conference v. International Ass'n of Machinists & Aerospace Workers*, 830 F.2d 741, 749-50 (7th Cir. 1987). The exclusive jurisdiction of the National Mediation Board over representation disputes is parallel. Since courts can grant preliminary injunctions in minor disputes, they can grant preliminary injunctions in representation disputes, which anyway as in this case are sometimes a species of major dispute.

The confusion over injunctive remedies in Railway Labor Act cases arises from failure to recognize that the distinction among types of dispute relates solely to the different nonjudicial mechanisms that the Act creates for the different types: compulsory arbitration for minor disputes, bargaining and mediation for most major disputes, and resolution by the National Mediation Board for representation disputes, whether major or minor in character, or neither—as in a dispute between two unions, the employer being neutral and the collective bargaining agreement silent, over which

union is authorized to represent a particular group of employees. Compliance with any of the prescribed mechanisms can be enforced by an injunction; nothing in the Railway Labor Act or the Norris-LaGuardia Act stands in the way. The parties agree that if this is a representation dispute, and we hold that it is, it should be resolved as a representation dispute, which is to say resolved by the National Mediation Board. But that has nothing to do with the appropriateness of injunctive relief.

The injunction issued in this case does have a problem, but not a problem having to do with the district court's authority—rather a problem with how that court has exercised its equitable discretion. The injunction maintains, for the indefinite future (it has no expiration date, and is "preliminary" in name only), what may well be an illegal status quo—a union supported by only a fourth of the bargaining unit yet acting as the bargaining representative of that minority. We are given no reason to think that a majority of Republic's mechanics want to be represented by the Teamsters Union, and if not they may be placed at a disadvantage if Republic is required to extend special privileges to Frontier's mechanics.

The parties, accepting the interpretation of 45 U.S.C. § 152 Ninth in *Railway Labor Executives' Ass'n v. National Mediation Board*, 29 F.3d 655, 665-69 (D.C. Cir. 1994) (en banc), agree that only a union (or an employee having authorization cards from at least thirty-five percent of the employees in the craft or class, see *National Mediation Board Representation Manual*, *supra*, § 19.602) can

ask the National Mediation Board to resolve a dispute over who (if anyone, see *Air Line Pilots Ass'n, Int'l v. Texas Int'l Airlines, Inc.*, 656 F.2d 16, 24 (2d Cir. 1981)—Republic says no one in this case) represents a unit of workers. An employer cannot invoke the Board's jurisdiction. The Teamsters Union has of course no incentive to ask the Board to act—it doesn't want to lose its status as the bargaining representative for Frontier's mechanics. The other Republic mechanics are not represented by a union, and as far as anyone knows no other union, or other employee group, or individual employee, wants to represent them and therefore has an incentive to ask the Board to determine whether the Teamsters Union is an illegal representative of mechanics who are employed by a subsidiary of Republic, as Frontier's mechanics now are if Republic's subsidiaries constitute a single transportation system.

The union is unable to justify the standoff produced by the injunction in its present form. According to the union there is no mechanism, operable in this case, for placing the question whether it's the legal representative of the Frontier mechanics before the agency that has exclusive jurisdiction to answer it. The National Mediation Board is that agency, but the injunction prevents the Board from exercising jurisdiction because the airline cannot refer the issue to it, the union can but won't, and no one else who could seems interested in doing so.

Fortunately this perverse result can be avoided by the application of age-old equitable principles. Let the injunc-

tion be modified to condition its continuance on the union's prompt application to the Board for a ruling on the representation of Frontier's mechanics: are they represented by the union, or by no one? If the union complies with the condition in good faith (no foot dragging), as it can easily do, the injunction will preserve the status quo, and thus the union's representative status, until the Board resolves the dispute.

Neither party disputes the district court's authority to enjoin an employer from effectively decertifying a union, which is the nature of the injunction that the district court issued in this case, and such an injunction, like any other injunction, is governed by equitable principles. As has been said with specific reference to injunctive relief under the Railway Labor Act, "it is the duty of a court of equity granting injunctive relief to do so upon conditions that will protect all . . . whose interests the injunction may affect. Since the power to condition relief is essential to ensure that extraordinary equitable remedies will not become the engines of injustice, it would require the clearest legislative direction to justify the truncation of that power." *Brotherhood of Locomotive Engineers v. Missouri-Kansas-Texas R.R.*, *supra*, 363 U.S. at 532 (citation omitted). What could be *less* equitable than to allow the union, having obtained an injunction in its favor, to foreclose by deliberate inaction a determination of whether it remains the legally authorized bargaining representative of the Frontier mechanics?

The judgment of the district court is vacated and the court directed to reissue the injunction, as modified in

accordance with this opinion, promptly so that the dispute can be placed on course to a rapid resolution.

VACATED AND REMANDED,
WITH DIRECTIONS.