**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYES DIVISION/IBT, *Plaintiff-Appellant*, v. BNSF RAILWAY, INC., *Defendant-Appellee.* | Nos. 15-56556 16-55070 D.C. No. 2:15-cv-05091-PA-PJW OPINION |

Appeal from the United States District Court
for the Central District of California
Percy Anderson, District Judge, Presiding

Argued and Submitted May 2, 2016
Pasadena, California

Filed August 24, 2016

Before: MILAN D. SMITH, JR. and JACQUELINE H.
NGUYEN, Circuit Judges, and CLAUDIA WILKEN,[*]
Senior District Judge.

Opinion by Judge Milan D. Smith, Jr.

---

[*] The Honorable Claudia Wilken, Senior United States District Judge for the Northern District of California, sitting by designation.

## SUMMARY[**]

### Labor Law

The panel affirmed the district court's judgment in favor of an employer on a union's claim that the employer violated the Railway Labor Act by retaliating against an employee who attempted to file grievances.

The panel concluded that the district court's subsequent entry of final judgment mooted the question of the propriety of a preliminary injunction against a strike.

The panel held that the parties' dispute was "minor," and therefore subject to mandatory arbitration, because the employer asserted a contractual right to take the contested action of disciplining the employee, and the action was arguably justified by the parties' collective bargaining agreement. The panel rejected the union's argument that the distinction between major and minor disputes did not apply because the dispute was not a dispute over enforcement of the collective bargaining agreement, but rather concerned whether the employer's alleged retaliation undermined the purpose of the Railway Labor Act and the grievance process.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Richard S. Edelman (argued) and Matthew D. Watts, Mooney, Green, Saindon, Murphy & Welch, P.C., Washington, D.C., for Plaintiff-Appellant.

David M. Pryor (argued) and Andrea L. Hyatt, BNSF Railway Company, Forth Worth, Texas; Donald J. Munro, Jones Day, Washington, D.C.; for Defendant-Appellee.

## OPINION

M. SMITH, Circuit Judge:

In this appeal, we decide whether the test for distinguishing between major and minor labor disputes pursuant to the Railway Labor Act (RLA), 45 U.S.C. §§ 151–188, applies when a labor union alleges that an employer illegally retaliated against an employee attempting to file grievances. We hold that the test does apply, and that the district court correctly categorized the dispute in this case as minor, and subject to mandatory arbitration.

## FACTS AND PRIOR PROCEEDINGS

BNSF Railway, Inc. (BNSF) is a major freight railroad in North America. Brotherhood of Maintenance of Way Employes[1] Division/IBT (BMWED) is a labor union representing workers who maintain railway track

---

[1] The union uses this archaic, but recognized, spelling of the word "employees" in its name. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 743 (1961).

infrastructure. Bobby Tindell is a senior track supervisor in Needles, California, who is employed by BNSF and represented by BMWED. As a senior employee, Tindell is entitled to be given preference for overtime assignments, which are to be awarded based on seniority.

In 2015, Tindell became concerned that more junior employees were being offered overtime shifts that should have been first offered to him. Under the collective bargaining agreement (CBA) that governs the parties in this dispute, when a senior employee is improperly denied an overtime shift, he may file a time claim grievance to collect compensation for that overtime. Because the CBA does not provide for a discovery mechanism for such grievances, Tindell began to gather his own evidence to support his overtime claims. He began by accessing BNSF's payroll system to find out whether junior employees had worked overtime shifts.[2]

In addition to accessing the database, Tindell repeatedly questioned his junior coworkers about their overtime shifts. One of those coworkers, Kyle Sahlstrom, complained to BNSF's human resources department about Tindell's questions. He reported that over the course of a year, Tindell would access Sahlstrom's payroll records on a weekly basis and then come to Sahlstrom to tell him "about how much more money I make th[a]n he does with the exact dollar

---

[2] Tindell had access to the system as the result of a previous position he held at BNSF. After he left that position, BNSF failed to terminate his access to the employee information. Tindell had not been formally instructed that accessing the payroll system in order to investigate a time claim was prohibited, but once BNSF discovered he had been accessing the database for this purpose, he was told to stop doing so.

amount." According to Sahlstrom, Tindell told him that he acted similarly with "everyone that he has seniority on so he can put time claims in." Sahlstrom viewed these conversations as invasive, and asked the human resources department to intervene. According to Tindell, his conversations with his coworkers were not "hostile, threatening, or argumentative," but Sahlstrom claimed he felt "harassed." Tindell was instructed to stop asking his coworkers about their overtime, but he continued doing so. Shortly after he was instructed to stop bothering Sahlstrom, Tindell approached Sahlstrom and another coworker and told them they must tell him any time they worked an overtime shift, and if they did not, he had other means of discovering the information. Sahlstrom and the other employee reported this incident to BNSF. Specifically, they told BNSF that Tindell "refused to honor their request to stop asking them about their overtime work and was creating an unpleasant work environment."

Because of these complaints, BNSF initiated an investigation of Tindell for violating BNSF's rules of conduct. As a result of that investigation, it suspended Tindell for 30 days for "continuing to create an unpleasant work environment to various employees after confronting them about their overtime pay" although Tindell had been "clearly instructed . . . to stop." Under the CBA, BMWED could (and did) file an appeal of the disciplinary decision on behalf of Tindell. That appeal proceeded through the arbitration process outlined in the CBA.

On July 7, 2015, Tindell and Sahlstrom attended a meeting with other track supervisors. During the meeting, Tindell and Sahlstrom got into an argument about the overtime issue, during which they each made offensive and

profane comments to the other. After the incident, Sahlstrom filed another written complaint, this time about Tindell's behavior and language at the meeting. He reported that since the prior investigation, he had tried to keep his distance from Tindell, but that Tindell had not been treating Sahlstrom "as an equal in the work place," which caused him to "feel very uncomfortable with the attitude and now with the derogatory comments." BNSF initiated a second investigation of Tindell for his part in the argument.[3]

While Tindell's appeal of his suspension was proceeding through the arbitration process, BMWED filed a complaint against BNSF in the District Court for the Central District of California. It alleged that BNSF's disciplinary actions "interfered with and subverted the RLA grievance and arbitration processes," and sought a declaration that BNSF's actions violated the RLA "by imposing discipline and penalties on use of the statutorily mandated minor dispute resolution process." Eleven days later, BMWED sent BNSF a notice that union members were prepared to strike if BNSF did not rescind Tindell's discipline within ten days. BNSF filed a motion for a temporary restraining order and preliminary injunction to enjoin BMWED from proceeding with the threatened strike, arguing that the dispute between the parties was a minor one that was subject to mandatory arbitration, and that any strike would therefore be illegal. In support of its motion, BNSF submitted several witness declarations from BNSF officials. BMWED did the same in opposition.

The district court ordered a hearing on the motion for a preliminary injunction. In that order, it stated that it would

---

[3] BNSF also investigated Sahlstrom's participation in the argument.

not take live direct testimony, but would instead receive such testimony from witness declarations. It further directed the parties to file any requests to cross-examine witnesses who had filed written declarations, as long as that person was not beyond the court's subpoena power and was available to testify at the hearing. The court ruled that if a witness did not appear for live cross-examination after the court had ordered the witness's appearance, the court would not consider the direct testimony in that witness's declaration. BMWED requested cross-examination of several of BNSF's witnesses, and the court granted that request. At the hearing, all of the declarants whose direct testimony was considered were subject to live cross-examination. Sahlstrom did not submit a declaration or testify at the hearing. After the hearing, the district court ruled in favor of BNSF, concluding that the dispute was minor and subject to mandatory arbitration, and enjoining the threatened strike.

BMWED filed an interlocutory appeal of the preliminary injunction. In its briefing, it raised two challenges to the injunction. First, it argued that when the district court received direct testimony through written declarations rather than live testimony, it violated the procedural requirements contained in the Norris-La Guardia Act, 29 U.S.C. §§ 101–115, which prohibit federal courts from enjoining labor strikes "except after hearing the testimony of witnesses in open court (with opportunity for cross-examination)." *Id.* § 107. Second, it argued that on the merits, the district court legally erred when it applied the test for distinguishing a major dispute from a minor dispute, which is principally articulated in *Consolidated Rail Corp. v. Railway Labor Executives. Ass'n*, 491 U.S. 299, 307 (1989) (*ConRail*). Specifically, BMWED argued that because its complaint alleges that BNSF retaliated against Tindell in a way that

"subverts" the purposes of the RLA and the grievance process, its claim was "statutory," and therefore not subject to the *ConRail* analysis.

After the parties' appellate briefs were filed, the parties stipulated in district court that "the factual record developed at the hearing on the defendant's motion for preliminary injunction is sufficient to convert the Court's order into a final judgment." The court then concluded "after reviewing the evidence, [that] the dispute is minor," and "BNSF has not violated the RLA."

**JURISDICTION AND STANDARD OF REVIEW**

When this appeal was initially filed, we had jurisdiction over the preliminary injunction as an interlocutory appeal pursuant to 28 U.S.C. § 1292(a)(1). Under that procedural framework, we would have reviewed "the legal determination of whether the district court had the power to issue an injunction de novo," and "the district court's exercise of that power for abuse of discretion." *Aircraft Serv. Int'l, Inc. v. Int'l Bhd. of Teamsters*, 779 F.3d 1069, 1072 (9th Cir. 2015) (en banc) (quoting *Cont'l Airline, Inc. v. Intra Brokers, Inc.*, 24 F.3d 1099, 1102 (9th Cir. 1994)). Such a review would also have considered whether the district court's decision not to hear direct testimony live in court was a procedural violation of the Norris-La Guardia Act that would have made the preliminary injunction improper.

However, the subsequent entry of the final judgment in the case mooted the question of the procedural propriety of the preliminary injunction. The final judgment ended the life of the preliminary injunction, and it no longer had binding

effect on the parties.[4] *See Envtl. Prot. Info. Ctr., Inc. v. Pac. Lumber Co.*, 257 F.3d 1071, 1075 (9th Cir. 2001) (citing *Madison Square Garden Boxing, Inc. v. Shavers*, 562 F.2d 141, 144 (2d Cir. 1977)).

Because the district court evaluated the evidence and made findings of fact after the preliminary injunction hearing, we review the final judgment as the result of a bench trial. *See OneBeacon Ins. Co. v. Haas Indus., Inc.*, 634 F.3d 1092, 1096 (9th Cir. 2011). On that basis, we review the district court's findings of fact for clear error and conclusions of law de novo. *Id.*

## ANALYSIS

A strike or work stoppage is "unlawful" under § 107(a) of the RLA if the strike concerns a "minor" dispute that is subject to mandatory arbitration. *Ass'n of Flight Attendants v. Mesa Air Grp., Inc.*, 567 F.3d 1043, 1046–47 (9th Cir. 2009) (holding that federal courts "may issue injunctions to freeze the status quo during the bargaining process over" major disputes, but not minor disputes).

---

[4] At oral argument, counsel for BMWED argued that this issue was still live because the final judgment permanently enjoined the union from striking, and the Norris-La Guardia Act governs both preliminary and permanent labor injunctions. We see no indication of a permanent injunction in the record. BMWED was the plaintiff in this case, and BNSF did not counterclaim for permanent injunctive relief; it requested only the pretrial remedy of a preliminary injunction. The final judgment merely ruled that BMWED's declaratory judgment action be dismissed on the merits, and that it should recover nothing. Such a judgment is not an "injunction" subject to the requirements of the Norris-La Guardia Act.

Minor disputes are those "growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions." 45 U.S.C. § 153(i); *see ConRail*, 491 U.S. at 303. They are "attempts to enforce existing contractual obligations and rights." *Ass'n of Flight Attendants*, 567 F.3d at 1047. "Where an employer asserts a contractual right to take the contested action, the ensuing dispute is minor if the action is arguably justified by the terms of the parties' collective-bargaining agreement. Where, in contrast, the employer's claims are frivolous or obviously insubstantial, the dispute is major." *ConRail*, 491 U.S. at 307. The *ConRail* test "looks to whether a claim has been made that the terms of an existing agreement either establish or refute the presence of a right to take the disputed action. The distinguishing feature of such a case is that the dispute may be conclusively resolved by interpreting the existing agreement." *Id.* at 305. The burden on the employer to show that its position is "arguably justified" by the agreement is "relatively light." *Id.* at 306–07. "When in doubt, courts construe disputes as minor." *Ass'n of Flight Attendants*, 567 F.3d at 1047.

BMWED attempts to sidestep the *ConRail* framework entirely by claiming that the distinction between minor and major disputes does not apply to the case before us. We disagree. The union's contention is that the dispute is neither a dispute over the enforcement of the CBA nor the negotiation of new rights, but is instead a dispute over whether BNSF's alleged retaliation against Tindell undermines the purpose of the RLA and the grievance process. This is a distinction without a difference. BNSF has asserted a "contractual right to take the contested action." *ConRail*, 491 U.S. at 307. BMWED, in response, contends that BNSF's reliance on the contract is a pretext for illegal

retaliation. This is a dispute that fits squarely within the major/minor framework from the RLA and *ConRail*. BMWED's defense to the contractual language is tantamount to an argument that BNSF's contractual position is "frivolous" or in "bad faith," a concept incorporated into the *ConRail* test. At bottom, BMWED's claim is that BNSF's contractual position is not "arguably justified" because it is really a cover for illegal retaliation. BMWED cannot merely invoke the general concept of retaliation or corporate action that discourages the filing of grievances in order to evade mandatory arbitration.

As the district court noted, BMWED's position that it should not be subject to the *ConRail* test is unsupported by any legal precedent, and would "turn the RLA on its head." The purpose of the statute is "to head off strikes, not encourage them." *Aircraft Serv. Int'l*, 779 F.3d at 1079. According to BMWED, a union's invocation of *any* statutory argument supporting its strike, regardless of its strength, would shake off the burdens of *ConRail* and make its strike lawful and unenjoinable. Such a reading of *ConRail* is untenable.

Having concluded that the district court's decision to apply the *ConRail* test was appropriate, we also conclude that it did so faithfully when it ruled that the parties' dispute is a minor one. Ultimately, the dispute in this case is about whether Tindell's discipline was justifiable. BNSF has a colorable position that its suspension of Tindell was supported by the terms of the CBA. That document incorporates BNSF's workplace rules and policies, which in turn prohibit employee conduct that is "insubordinate," "quarrelsome," and "discourteous."

Based on the information BNSF had at its disposal, Tindell was arguably in violation of those standards. It received multiple unsolicited complaints about Tindell from his coworkers that he had continued to badger them about their overtime even after he had been asked to stop, which made them feel uncomfortable and harassed.[5] Although we do not here weigh these complaints against Tindell's need for information to bring legitimate grievances or come to a conclusion about whether the discipline was retaliatory, Tindell's discipline could have been warranted under the existing rules and policies.

In arbitration, BMWED may be able to show that BNSF's reliance on the CBA and associated rules of conduct was pretextual. The union might also be able to prove that the discipline was "unjust," which is prohibited by the CBA. However, such allegations, in and of themselves, do not transform this case into a major dispute that can lawfully be made the subject of a strike. If both sides have non-frivolous positions regarding the interpretation and application of existing agreements and policies, the dispute is minor under the RLA and *ConRail*, and must be resolved through arbitration.

---

[5] BMWED also contends that the district court abused its discretion when it only heard evidence about Sahlstrom's complaints from BNSF officials and not from Sahlstrom himself, on the grounds that such testimony is "inadmissable double hearsay." We conclude that the district court did not abuse its discretion, because the testimony of BNSF officials was submitted for the purpose of explaining why BNSF chose to take disciplinary action, not whether Sahlstrom's complaints were accurate as a matter of fact. *See* Fed. R. Evid. 801(c) (defining hearsay in part as a statement "a party offers for the truth of the matter asserted in the statement").

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.